CC-2001-455                                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>         v.<br><br>Julio Valenzuela Morel<br><br>    Acusado-peticionario | Certiorari<br><br>2003 TSPR 10<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2001-455


Fecha: 10 de febrero de 2003


Tribunal de Circuito de Apelaciones:
                        Circuito Regional I


Juez Ponente:
                   Hon. Gilberto Gierbolini


Oficina del Honorable Procurador General:

                   Hon. Roberto J. Sánchez Ramos
                   Procurador General


Abogado de la Parte Peticionaria:

                   Lcda. Maribel Flores Fonseca


Materia: Artículo 401 Ley de Sustancias Controladas

Este documento constituye un documento oficial del Tribunal Supremo
que está sujeto a los cambios y correcciones del proceso de
compilación y publicación oficial de las decisiones del Tribunal.
Su distribución electrónica se hace como un servicio público a la
comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                         CC-2001-455    CERTIORARI

Julio Valenzuela Morel

    Acusado-peticionario

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 10 de febrero de 2003

Como resultado de unas investigaciones realizadas por agentes del Negociado Federal de Investigaciones del Departamento de Justicia de los Estados Unidos, conjuntamente con agentes del orden público del estado de Nueva York, del Servicio Postal de los Estados Unidos y del Servicio de Aduana (U.S. Customs), el 14 de octubre de 1999, un magistrado de dicho Estado emitió varias órdenes de arresto contra los hermanos Wascar, Milton, Juan Carlos y Julio Valenzuela Morel.[1] A dichos individuos se les vinculaba con la importación

---

[1] **Las órdenes de arresto fueron emitidas por infracciones a ciertas leyes del estado de Nueva York: P.L. 460.20 (1)(A) (Enterprise Corruption) y P.L. 170.10 (1) (Forgery).**

de motoras acuáticas, o "jet skis", robadas así como con el trasiego de drogas del mencionado Estado a Puerto Rico.

Algunos días más tarde, el 25 de octubre de 1999, se llevó a cabo en nuestra Isla un operativo para diligenciar las antedichas órdenes de arresto; operativo en el cual participaron agentes de las referidas agencias, presentándose éstos a la residencia de Julio Valenzuela Morel, sita en la Urb. Caparra Terrace, Calle 10 SE 1267, San Juan, Puerto Rico, donde no encontraron persona alguna, procediendo a retirarse del lugar.

Habiéndose retirado los agentes de la mencionada residencia, se recibió una confidencia en las oficinas del FBI en San Juan en la cual se informó que un hombre hispano acababa de llegar a la residencia de la Urb. Caparra Terrace, perteneciente a Julio Valenzuela Morel. El informante advirtió que dicho sujeto estaba removiendo de esa residencia unos bolsos de viaje, los cuales luego depositaba en el baúl de un vehículo marca Lincoln Continental, el cual estaba estacionado en una residencia aledaña, pintada de azul.[2]

Los agentes regresaron al lugar. Una vez allí, pudieron percatarse de que, efectivamente, en la casa que había sido descrita por el informante, estaba estacionado en la marquesina, encendido, un vehículo marca Lincoln Continental, en el cual había un sujeto que se disponía a salir en el mismo. Al percatarse los agentes de que el

[2] **Esa residencia resultó ser, como veremos, propiedad de Juan Carlos Valenzuela.**

individuo estaba presto a marcharse, bloquearon la salida de la residencia, estacionándose frente a la misma, procediendo a identificarse y a solicitar del individuo que se bajara del vehículo, se alejara del mismo y se identificara. El individuo accedió a lo solicitado.

Al identificarse como Juan Carlos Valenzuela Morel, los agentes lo arrestaron, pues contra éste pendía una orden de arresto.[3] Acto seguido, le preguntaron si había alguien más en la residencia a lo cual éste respondió en la negativa. Los agentes solicitaron de Juan Carlos Valenzuela que les permitiera "verificar" si en su casa había alguien más, a cuya petición éste, alegadamente, accedió.

Los agentes centraron, entonces, su atención en el vehículo Lincoln Continental, el cual permanecía encendido y estacionado en el mismo lugar, apagándolo y retirando la llave de la ignición. Procedieron a abrir el baúl con el alegado propósito de verificar si Julio Valenzuela se encontraba escondido en el mismo. En el baúl encontraron dos bultos; dentro de los mismos, había once (11) paquetes de envoltura transparente envueltos con cinta adhesiva color gris, los cuales, aparentemente, contenían marihuana.

Según los agentes, en ese momento, procedieron a leerle las advertencias a Juan Carlos Valenzuela. Luego de que éste, alegadamente, expresara que había entendido las mismas, procedieron a preguntarle sobre el contenido y

---

[3] **Recuérdese que ésta fue una de las órdenes emitidas por un magistrado del estado de Nueva York que estaba pendiente de ser diligenciada.**

procedencia de los bolsos. Éste respondió que los había extraído de la residencia de su hermano --Julio Valenzuela-- a petición de éste y que desconocía qué contenían los mismos.

Toda vez que los bolsos de viaje fueron supuestamente extraídos de la residencia de Julio Valenzuela, los agentes entendieron que podía haber más droga en la misma. En vista de ello, acudieron ante un magistrado del Tribunal Federal para el Distrito de Puerto Rico en solicitud de la expedición de una orden de registro y allanamiento contra la residencia de Julio Valenzuela Morel.[4] A estos efectos, el Sr. Alberto Cases, uno de los Agentes Especiales del Negociado Federal de Investigaciones que estaba participando en la investigación conjunta, y quien fue informado por los agentes que habían acudido al referido lugar de lo que había acontecido, prestó declaración jurada ante la magistrado federal, Hon. Aida M. Delgado Colón. La referida magistrado, luego de examinar la declaración de dicho agente, encontró causa probable para la expedición de una orden de registro y allanamiento contra la residencia de Julio Valenzuela.[5]

---

[4] **Mientras esto sucedía, varios agentes establecieron una vigilancia alrededor de la residencia de Julio Valenzuela Morel en espera de que éste se personara a la misma.**

[5] **A estos efectos, el Sr. Cases declaró, en lo pertinente, lo siguiente:**

> **Upon the Agents' departure from the residence of Julio Valenzuela Morel, […] an anonymous telephone call was received at the FBI office informing that a Hispanic male had just gone into**

Al diligenciar la referida orden, los agentes federales incautaron en dicha residencia alrededor de treinta (30) libras de marihuana las cuales estaban dentro de un zafacón ubicado en una de las habitaciones de la misma.

---

that same residence, previously visited by the FBI Agents, and had removed some traveling black bags and placed them in a dark color Lincoln Continental and parked inside a blue house located in the same street where the Agents had been previously. The investigation revealed that this second residence turned out to be at 10th Street SE, #1261 (*Second Residence*). I have also been advised by Agent Marchand that during the entry at the *first residence* for the purposes of arresting Julio Valenzuela Morel, he observed approximately four suitcases/traveling bags in the residence but they were not searched.

I have been informed by Special Agent Carlos Marchand that he responded to the area where that caller had indicated and spotted a dark color Lincoln Continental in the driveway of a blue house at 10th Street SE, #1261, Caparra Terrace, San Juan, Puerto Rico. The driver responded that his name was Juan Carlos Valenzuela Morel. Agent Marchand ascertained that Juan Carlos was one of the persons sought for the arrest and placed him in custody.

Agent Marchand advised me he knew that this arrest represented the third person wanted and that a fourth fugitive, Julio Valenzuela Morel, was still at large. Agent Marchand proceeded to remove the keys from the ignition of the Lincoln, which was running, and looked inside the trunk to see if the other fugitive was hiding there.

Agent Marchand further advised me that as a result of the search in the trunk, he did not locate the fugitive but found two traveling bags, one of which contained marihuana. During subsequent interrogation of subject Juan Carlos Valenzuela Morel, made under advise of rights, he informed Task Force Agents Miguel Rodriguez Falcon and Angel Negron that he (Juan Carlos) had received a telephone call from his brother, Julio Valenzuela Morel, instructing him to remove the containers with marihuana from his residence […].

Luego de los trámites pertinentes, y debido a la "poca" cantidad de droga que había sido ocupada, la Fiscalía Federal decidió referir el caso a las autoridades estatales para el correspondiente procesamiento de las personas involucradas. Se sometieron denuncias contra los hermanos <u>Juan Carlos</u> y <u>Julio</u> Valenzuela Morel por infracción a los Artículos 401 y 412 de la Ley de Sustancias Controladas, 24 L.P.R.A. secs. 2401 y 2412 respectivamente.[6]

Habiéndose determinado causa probable para arresto, la vista preliminar fue señalada para el 23 de mayo de 2000. Llegada la fecha de la misma, la defensa solicitó el archivo y sobreseimiento de los casos amparándose en que no se habían cumplido los requisitos exigidos por las Reglas 229 y 232 de Procedimiento Criminal de Puerto Rico, 34 L.P.R.A. Ap. II R 229 y 232, las cuales disponen, entre otras cosas, cuál es la figura con autoridad para expedir una orden de registro y allanamiento, y sobre los requerimientos del proceso de diligenciamiento, respectivamente. Además de señalar, entre otros asuntos, que hasta ese momento no le habían entregado copia de la orden en virtud de la cual varios agentes irrumpieron en su residencia estando él ausente, la representación legal de <u>Julio</u> Valenzuela específicamente cuestionó la validez de la misma por haber sido dicha orden expedida por un magistrado

---

[6] **Estas violaciones consisten, respectivamente, en la posesión de sustancias controladas con la intención de distribuir y la utilización de parafernalia relacionada con drogas ilícitas.**

federal al amparo de las Reglas de Procedimiento Criminal de dicha jurisdicción.

El tribunal de instancia decretó el archivo y sobreseimiento de los cargos radicados contra Julio Valenzuela Morel, ello en virtud de las disposiciones de la Regla 247 (b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II R 247.[7] El tribunal basó su dictamen en las disposiciones que reglamentan la facultad de un magistrado federal, las cuales, a su juicio, imponen limitaciones a la jurisdicción del mismo; asimismo, fundamentó su dictamen en nociones relativas al derecho a la intimidad reconocido en la Constitución del Estado Libre Asociado de Puerto Rico, el cual rebasa las garantías del derecho contra registros e incautaciones irrazonables establecido en la jurisdicción federal.

Inconforme con dicho dictamen, el Procurador General interpuso recurso de certiorari ante el Tribunal de Circuito de Apelaciones. Mediante sentencia de 30 de abril de 2001 el foro apelativo intermedio expidió el auto solicitado y revocó la resolución recurrida. Razonó dicho foro que:

> el procedimiento a seguir para la emisión de una orden de allanamiento federal provee las mismas garantías que en el foro estatal, [...] por lo tanto, [la misma] es igualmente válida. La orden en este caso, proviene de una magistrado, y ésta a

---

[7] **Respecto al co-acusado, Juan Carlos Valenzuela Morel, el tribunal de instancia resolvió que el proceso acusatorio habría de continuar y que la controversia sobre el consentimiento prestado por éste para que las autoridades federales registraran su propiedad se adjudicaría en el acto de la vista preliminar.**

su vez ha tomado como base una declaración jurada de un agente del F.B.I., la cual proveyó razones suficientes para tener sospechas y ordenar el allanamiento.

Insatisfecho con la decisión emitida por el foro apelativo intermedio, Julio Valenzuela Morel acudió ante este Tribunal --vía recurso de certiorari-- señalando que erró el referido foro judicial al:

revocar la resolución del tribunal de instancia resolviendo con lugar la solicitud de la defensa de que no se le permitiera utilizar al ministerio público en una corte de Puerto Rico una supuesta orden de allanamiento expedida por un magistrado federal en la Corte del Distrito Federal en Puerto Rico.

Expedimos el auto; estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

II

El caso ante nuestra consideración plantea, en síntesis, la controversia de si puede utilizarse, en nuestra jurisdicción, evidencia incautada en virtud del diligenciamiento de una orden de registro y allanamiento expedida por un magistrado federal para encausar criminalmente a un ciudadano.

Dicha interrogante requiere, además, que examinemos, aun cuando brevemente, los siguientes asuntos: la facultad de un magistrado federal para expedir órdenes de registro y allanamiento; la naturaleza de su función dentro de ese contexto, así como los intereses tutelados en virtud de

ésta; y los principios de Derecho a los cuales está sujeta

dicha facultad, es decir, las circunstancias dentro de las

cuales un magistrado federal puede expedir una orden de

registro y allanamiento. Atendido lo anterior, habremos de

examinar si las referidas circunstancias aparejan o

satisfacen los requisitos que nuestro ordenamiento exige

para que exista la "causa probable" que justifica la

expedición de una orden de registro y allanamiento.


III

La Regla 41 de Procedimiento Criminal Federal dispone,

en lo pertinente, de la siguiente manera:

(a)     Authority to Issue Warrant. Upon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district, for a search of property or for a person within the district and (2) by a federal magistrate judge for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed and [...]

(b)     Property or Persons Which May Be Seized With a Warrant. A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense; or (4) person for whose arrest there is probable cause, or who is unlawfully restrained.

(c)     Issuance and Contents. (1) Warrant Upon Affidavit. A warrant other than a warrant upon oral testimony under paragraph (2) of this subdivision shall issue only on an affidavit or

affidavits sworn to before the federal magistrate judge or state judge and establishing the grounds for issuing the warrant. If the federal magistrate judge or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, that magistrate judge or state judge shall issue a warrant identifying the property or person to be seized and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the federal magistrate judge or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses the affiant may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States. [...]

[...]

(C)      Issuance. If the Federal magistrate judge is satisfied that the circumstances are such as to make it reasonable to dispense with a written affidavit and that grounds for the application exist or that there is probable cause to believe that they exist, the Federal magistrate judge shall order the issuance of a warrant by directing the person requesting the warrant to sign the Federal magistrate judge's name on the duplicate original warrant. [...]

Sabido es que tanto la Cuarta Enmienda de la Constitución Federal, como su jurisprudencia interpretativa, conciben reglas y principios básicos encaminados a establecer determinados controles, de suerte que la conducta de los agentes del orden público al llevar a cabo sus funciones investigativas esté enmarcada dentro de parámetros de razonabilidad. Véase: Illinois v. McArthur, 121 S.Ct. 936, res. el 20 de febrero de 2001.

El Tribunal Supremo de los Estados Unidos ha expresado que:

> The grounds for a search must satisfy objective standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests. The governmental interests to be served in the detection or prevention of crime are subject to traditional standards of probable cause to believe that incriminating evidence will be found. Torres v. Puerto Rico, 442 U.S. 465, 471 (1979). (Énfasis suplido.)

Como garantía de la pureza y neutralidad que deben distinguir los aludidos procesos de determinación de causa probable en la jurisdicción federal, la figura del magistrado imparcial juega un papel crucial. Véase: Illinois v. McArthur, ante. La presencia de la autoridad judicial en este contexto, es pues, uno de los mecanismos que se han instituido al amparo de la Cuarta Enmienda de la Constitución Federal para asegurar que la interferencia estatal con los intereses individuales se logre mediante procesos investigativos enmarcados dentro de parámetros de razonabilidad.

Esto así, toda vez que el mandato consagrado en la Cuarta Enmienda de la Constitución Federal no se da contra todo tipo de registro sino sólo contra aquellos que son irrazonables. Véase: United States v. Sharpe, 470 U.S. 675 (1985). La razonabilidad del registro dependerá de todas las circunstancias dentro de las cuales se lleva a cabo el mismo y de la naturaleza o el método investigativo empleado. United States v. Montoya, 473 U.S. 531 (1985).

En consecuencia, al examinar, como en el caso de autos, la validez de una orden de registro y allanamiento expedida por un magistrado federal dentro del ejercicio de sus facultades, el análisis correcto reside en una evaluación ponderada de las circunstancias específicas que tuvo ante sí esa autoridad judicial que entendió procedente la expedición de la referida orden.[8] De determinarse que la orden expedida por un magistrado federal cumplió con las garantías mínimas que requiere nuestra Constitución, y que, por tanto, no hubo violación discernible, no tendría sentido práctico, ni motivo racional alguno, declararla ilegal meramente invocando, en sentido abstracto, que dicho mandato judicial se hizo al amparo de otra constitución y de otras reglas y no de la nuestra, la cual es *de factura más ancha*.

IV

El Artículo II, Sección 10, de la Constitución del Estado Libre Asociado de Puerto Rico consagra ciertos valores comunitarios de indiscutible jerarquía en nuestro ordenamiento: el derecho de la ciudadanía de proteger no tan sólo sus personas, sino que sus casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. Pueblo v. Meléndez Rodríguez, 136 D.P.R. 587

---

[8] **Al respecto, afirma con acierto el Prof. Chiesa que "no debe adjudicarse una controversia invocando el aforismo de 'factura más ancha' sin ulterior análisis."** *Los Derechos de los Acusados y la Factura Más Ancha*, **65 Rev. Jur. U.P.R. 83, 149 (1996).**

(1994). El ámbito de esta protección se extiende a la vida íntima y santidad del hogar; comprende aquellas cosas que conforman lo que este Tribunal ha denominado como "una prolongación de la persona." Pueblo v. Muñoz, et als., 131 D.R.R. 965, 979, N.3, (1992). Es decir, no entraña un derecho propietario; es una protección que ampara personas, no lugares, Pueblo v. Vargas Delgado, 105 D.P.R. 335 (1976). Su aplicación depende de la existencia de algún "interés personal sobre el objeto del allanamiento, registro o incautación de modo que se exhiba una expectativa de intimidad." Pueblo v. Ortiz Rodríguez, res. el 29 de enero de 1999, 99 TSPR 9.[9]

La protección que emana del antes citado precepto constitucional consigna tres propósitos fundamentales, a saber: disuadir y desalentar a los funcionarios del orden público de incurrir en conducta violatoria de la protección constitucional; la integridad judicial al evitar la complicidad de los tribunales con respecto a actos de desobediencia a la Constitución e impedir la admisión de evidencia ilegalmente obtenida; y no permitir que el Gobierno se beneficie de sus actos ilícitos pues lo contrario resultaría en un menoscabo de la confianza de la ciudadanía en las instituciones que le gobiernan. Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 DPR 352 (1992).

---

[9] **Citando con aprobación a Olga Elena Resumil de Sanfilippo, *Derecho Procesal Penal*, Tomo 1, Cap. 8, § 8.4, pág. 207; Chiesa Aponte, E.L., *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Tomo I, Cap. 6, Sec. 6.13, págs. 404-405.**

El efecto disuasivo en que está predicada nuestra regla de exclusión ha dado contenido real a la letra del citado mandato constitucional pues ha promovido la protección de la intimidad y dignidad de los individuos, amparando sus documentos y demás pertenencias, mediante la interposición de la figura de un juez entre la autoridad que el Estado delega en los funcionarios que llevan a cabo labores investigativas y la ciudadanía. Pueblo v. Miranda Alvarado, 143 D.P.R. 356 (1997).

Consistentemente hemos enfatizado que la autoridad judicial desempeña una labor de rango preponderante, pues funge como conciliadora entre los intereses del Estado de combatir la criminalidad y los derechos constitucionales de los ciudadanos. La convergencia de estos intereses engendra una pugna inevitable en la cual la figura del juez, interpuesta a la intervención del Estado, sirve una garantía de razonabilidad y de imparcialidad a la intrusión estatal. E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984); Pueblo v. Dolce, 105 D.P.R. 422 (1976).

Por otra parte, las normas que rigen la expedición de una orden de registro y allanamiento en nuestra jurisdicción están consignadas en las Reglas 229-234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 229-234. De éstas, la Regla 231, al igual que la Sección 10 de nuestra Constitución, dispone, entre otras cosas, que una orden de esta naturaleza sólo se puede librar cuando, de un examen del declarante y de la declaración que a los efectos preste

bajo juramento o afirmación ante un magistrado, éste quede convencido de que existe causa probable para efectuar el allanamiento o registro.

Así, pues, la autoridad judicial sólo podrá emitir una orden autorizando al Estado a llevar a cabo registros o allanamientos si existe causa probable, apoyada en juramento o afirmación, "para creer que el objeto legítimo[10] del registro se encuentra en un lugar particular."[11] Véase: Pueblo v. Camilo Meléndez, res. el 16 de junio de 1999, 99 TSPR 98.

La orden que a estos efectos se emita tiene que describir particularmente el lugar que va a registrarse, las cosas que se pretende ocupar así como las personas cuya detención se procura. Aquella evidencia que se obtenga en violación de lo antes dispuesto es inadmisible en los tribunales. Pueblo v. Serrano Cancel, res. el 23 de abril de 1999, 99 TSPR 62.

En la tarea de delimitar jurisprudencialmente el concepto de "causa probable", nos hemos ceñido al estándar que, a estos fines, quedara establecido en Pueblo v. Rivera, 79 D.P.R 742, 747 (1956). Allí expresamos que el referido concepto no puede encajonarse dentro de términos rígidos y absolutos. Específicamente, aclaramos que:

---

[10] **Entiéndase: la propiedad hurtada, robada, estafada, ilegal u obtenida mediante extorsión: o que ha sido, está siendo, o se propone ser utilizada como medio para cometer un delito. 34 L.P.R.A. Ap. II, R. 230.**

[11] **Olga E. Resumil, *Práctica Jurídica de Puerto Rico: Derecho Procesal Penal*, New Hampshire, Equity, 1990, t I, pág. 277.**

la cuestión estriba en determinar si los hechos y
las inferencias que se derivan de los mismos, a
juicio de una persona prudente y razonable,
bastan para creer que se está cometiendo o se ha
cometido el delito por el cual la ley autoriza la
expedición de una orden de allanamiento. Carroll
v. United States, 267 U.S. 132, 45 S.Ct. 280, 69
L.Ed. 543 (1925); Steele v. United States, 267
U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925);
Dumbra v. United States, 268 U.S. 435, 45 S.Ct.
546, 69 L.Ed. 1032 (1925). Meras sospechas no
constituyen causa probable pero tampoco es
necesario que el juez quede convencido fuera de
toda duda razonable de que se está violando la
ley. Como indicó el Tribunal Supremo de los
Estados Unidos en Brinegar v. United States, 333
U.S. 160, 175 (1949): 'Cuando nos referimos a
causa probable... actuamos a base de
probabilidades. Estas no son cuestiones
técnicas: se trata de consideraciones prácticas y
reales que surgen en la vida cotidiana a base de
las cuales actúan hombres prudentes y razonables
y no técnicos en derecho. La norma o regla en
cuanto a la prueba, por consiguiente, depende de
la cuestión que debe probarse'.

La causa probable, a ser determinada por la autoridad

judicial, define el punto a partir del cual la intromisión

del Estado en el ámbito de intimidad del individuo es

legítima y permisible. Para llevar a cabo dicha

determinación, el juez puede servirse de varias fuentes, a

saber: puede basarse en los hechos percibidos por el

declarante; en la información recibida de un tercero o en

una combinación de ambas. Pueblo v. Muñoz Santiago, 131

D.P.R. 965 (1992).

Cuando la declaración jurada de la cual se sirve el

magistrado para librar la orden de registro está basada en

información suministrada por un informante anónimo, es

decir, en una confidencia, el magistrado tiene que ejercer

un mayor grado de cautela al expedir la orden toda vez que

la fuente de esa información no está disponible para ser examinada por la autoridad judicial de suerte que se pueda determinar si ese testimonio es o no confiable y si merece credibilidad. *Ibid*. En estos casos, resulta de medular importancia determinar si la evidencia que tuvo ante sí el magistrado, considerada en su totalidad, proveía una base sustancial para la eventual determinación de causa probable. Pueblo v. Santiago Feliciano, 139 D.P.R. 361 (1995). En atención al problema de suficiencia que, bajo las normas constitucionales, presenta este tipo de declaración jurada que sirve de base para la expedición de una orden de registro y allanamiento, hemos hecho extensiva a este contexto la norma elaborada para los casos de arrestos sin orden cuyo motivo fundado surge de una confidencia.

Así, en esta clase de situaciones es preciso examinar las siguientes circunstancias: (1) que el confidente haya suministrado anteriormente información correcta; (2) que la confidencia conduzca hacia el criminal en términos de lugar y tiempo; (3) que la confidencia haya sido corroborada por observaciones del agente o por información proveniente de otras fuentes, y (4) que la corroboración se relacione con los actos delictivos cometidos o en proceso de cometerse. Véase: Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977). La corroboración de la confidencia, bien se logre por la observación personal del agente o por información de otras fuentes, Pueblo v. Muñoz Santiago, ante; Pueblo v. Acevedo

Escobar, 112 D.P.R. 770 (1982), es un requisito del cual no se puede prescindir. Véase: Pueblo v. Serrano Cancel, ante.

A estos efectos, hemos consignado que la corroboración no debe centrarse en determinar si la conducta percibida es inocente o incriminatoria; es preciso evaluar el grado de sospecha, si alguno, que levantan todos los actos de la persona. Así pues, es necesario que la investigación de los agentes del orden público arroje la presencia de alguna actividad delictiva del carácter sugerido en la confidencia. Pueblo v. Muñoz Santiago, ante; Pueblo v. Ortiz Alvarado, 135 D.P.R. 41 (1995). En vista de ello, hemos descartado cualquier acto de corroboración cuyo enfoque tenga como objetivo aquella información que sólo tienda a establecer que alguna parte de la confidencia ofrecida por el informante es veraz. Pueblo v. Serrano Cancel, ante.

En fin, al momento de determinar si existe o no causa probable para la expedición de una orden de registro y allanamiento, basada en una declaración jurada, tenemos la obligación de examinar si:

> el deponente tuvo base razonable, al momento de prestar su declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado; y si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada, hay causa probable que justifica la expedición de una orden. Pueblo v. Santiago Avilés, 98 TSPR 162, res. el 2 de diciembre de 1998, citando con aprobación: Pueblo v. Tribunal Superior, ante; Pueblo v. Bogard, 100 D.P.R. 565, (1972); Pueblo v. Bonilla, 119 D.P.R. 750 (1987), entre otros.

V

Determinamos, pues, a la luz del marco doctrinal anteriormente expuesto, si existían motivos fundados para la expedición, por parte de la magistrado federal, de la orden de registro y allanamiento contra la residencia del aquí peticionario. Para ello, es imprescindible efectuar un análisis, paso a paso, de los eventos que desencadenaron en la eventual emisión de la referida orden.

Como previamente reseñáramos, la orden de registro y allanamiento en controversia estuvo basada en la declaración jurada de uno de los agentes especiales involucrados en la investigación, el Sr. Alberto Cases, cuyo contenido transcribimos en la exposición de los hechos. Esta declaración, a su vez, tuvo como base una combinación de factores: la información que era del conocimiento personal del Sr. Cases; la ofrecida por el confidente; y las observaciones de los agentes mientras "corroboraban" la mencionada "confidencia". Corresponde examinar si de una evaluación de los hechos en su totalidad y de las inferencias que se derivan de éstos, podría razonablemente concluirse, según el juicio de una persona prudente y razonable, que se estaba cometiendo o se había cometido el delito por el cual la ley autorizaba la expedición de una orden de allanamiento. Pueblo v. Rivera, ante.

Según surge de la declaración en cuestión y como parte de la investigación, el Sr. Cases tenía conocimiento personal de que los hermanos Valenzuela Morel eran objeto de una investigación conjunta que estaban conduciendo varias agencias del gobierno federal, pues en primer lugar se les vinculaba a éstos con la importación de motoras acuáticas, o "jet-skis", robadas. Conocía, además, que se habían emitido órdenes para registrar dos negocios, uno de los cuales estaba ubicado en la municipalidad de Toa Baja, específicamente en Levittown; el otro, en Puerto Nuevo, cuyos propietarios y administradores eran los hermanos Valenzuela Morel. Además, el Sr. Cases estaba al tanto de que el FBI tenía pendiente otra investigación en la cual se relacionaba a esos sujetos con el trasiego de drogas.

El resto de la información sobre la cual el Sr. Cases declaró bajo juramento ante la magistrado federal para solicitar la expedición de la orden en cuestión, le fue brindada por los demás agentes especiales que tuvieron a su cargo el diligenciamiento de las órdenes de arresto que pendían en contra de los hermanos Valenzuela Morel. Estos agentes, a su vez, advinieron en conocimiento de lo relatado una vez se personaron, por segunda ocasión, a la casa No. 10 de la Calle #1267 de la Urb. Caparra Terrace, con el propósito de corroborar la confidencia recibida.

La referida confidencia, según surge de la declaración jurada del Sr. Cases, se limitaba a informar que un hombre hispano había acudido justamente a la residencia que

previamente había visitado el FBI y había removido de ésta unos bultos de viaje color negro y los había depositado en el baúl de un Lincoln Continental de color oscuro, el cual estaba estacionado en una casa pintada de azul sita en la misma calle donde ubicaba la casa que los agentes habían visitado previamente.

Conforme se desprende de la declaración prestada por Cases, luego de recibir la referida confidencia y dirigirse, para la correspondiente corroboración, a la residencia que había identificado el informante, uno de los agentes que participaban en dicho operativo:

> spotted a dark color Lincoln Continental in the driveway of a house at 10th Street SE, #1261, Caparra Terrace, San Juan, Puerto Rico. The driver of the Lincoln Continental was preparing to drive away and exit the area. Agent Marchand advised me that he blocked the Lincoln and questioned the driver as to his identity. The driver responded that his name was Juan Carlos Valenzuela Morel. Agent Marchand ascertained that Juan Carlos was one of the persons sought for the arrest and placed him in custody.

En esta etapa debe señalarse que, conforme la observación que hicieran los agentes al personarse al lugar por segunda ocasión, lo único de la confidencia recibida que los agentes pudieron comprobar, o corroborar, fue que en la residencia identificada por el informante --como la aledaña a la de Julio Valenzuela Morel-- se encontraba estacionado, encendido, un vehículo de motor marca Lincoln y un sujeto, que resultó ser Juan Carlos Valenzuela Morel,

quien se aprestaba a marcharse del lugar en el referido automóvil.

Tenemos en consecuencia <u>no sólo</u> que la confidencia recibida por los agentes del FBI <u>no</u> contenía notificación de la ocurrencia de evento delictivo alguno, <u>sino que</u> tampoco surgía, de la observación que hicieron los agentes al llegar al lugar, actividad delictiva alguna. Dichos hechos <u>podrían</u> servir de base para el argumento de que la intervención que hicieron dichos agentes con la persona de <u>Juan Carlos</u> Valenzuela --y el posterior registro del vehículo Lincoln y de su residencia-- <u>podría</u> ser una ilegal e irrazonable a la luz de nuestra jurisprudencia al respecto. <u>Pueblo</u> v. <u>Muñoz Santiago</u>, ante; <u>Pueblo</u> v. <u>Acevedo Escobar</u>, ante; <u>Pueblo</u> v. <u>Serrano Cancel</u>, ante.

Sin embargo, también <u>podría</u> argumentarse que dichos hechos --la confidencia recibida y las observaciones de los agentes-- considerados <u>en conjunto</u>, con la previa información en poder de los agentes del FBI --sobre un alegado trasiego de drogas por parte de estos sujetos-- <u>podrían</u> constituir suficientes motivos fundados, o causa probable, para justificar la actuación de los agentes respecto a <u>Juan Carlos</u> Valenzuela y los posteriores registros efectuados.

<u>No</u> tenemos, sin embargo, que resolver dicho punto <u>en el presente recurso</u>; ello en vista del hecho de que, conforme nuestra jurisprudencia, el <u>único</u> que tendría "standing" para plantear la irrazonabilidad o ilegalidad de

la actuación de los agentes --específicamente con relación al registro efectuado en el vehículo y residencia de Juan Carlos Valenzuela Morel-- lo es, precisamente, Juan Carlos y no el aquí peticionario Julio Valenzuela Morel. Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991); Pueblo v. Ramos Santos, 132 D.P.R. 363 (1992). [12]

---

[12] Cabe señalar que la legalidad de la intervención efectuada con respecto a Juan Carlos Valenzuela, la cual dio pie al hallazgo de los bultos en el vehículo, y del posterior registro de la residencia de éste son aspectos que estuvieron bajo la consideración del tribunal de instancia cuando dicho foro dictaminó el archivo y sobreseimiento de las denuncias que pendían contra el aquí peticionario, Julio Valenzuela Morel.

No obstante ello, lo que hoy resolvemos no está sujeto a la determinación que en su día haga el referido foro sobre la procedencia de esos registros; ello así, incluso, si se determinara que las intervenciones efectuadas por los agentes tanto al vehículo como a la residencia de Juan Carlos Valenzuela fueron ilegales. Nos explicamos.

En primer lugar, cabe aclarar que el peticionario nunca ha hecho un planteamiento en torno a la supresión de la evidencia ocupada en virtud de la intervención antes mencionada. Por otro lado, aún de haberlo hecho, no hubiese tenido éxito por la falta de un requisito que este Tribunal ha reputado como esencial: la legitimación activa, la cual sólo se confiere luego de reconocerse la existencia de una expectativa razonable de intimidad.

En nuestro ordenamiento, es norma reiterada que el factor determinante para evaluar si hubo una intromisión estatal, cuyo efecto activó la protección contra registros y allanamientos irrazonables, es el reconocimiento de una "expectativa razonable de intimidad" en el lugar registrado a favor de la persona afectada por la intromisión. Pueblo v. Rivera Colón, ante. Es esa expectativa la que le otorga al imputado la capacidad o la legitimación activa para levantar su reclamo. Pueblo v. Ramos Santos, ante.

**De conformidad con lo anterior, si fuera posible reconocer alguna expectativa razonable de intimidad en las circunstancias fácticas ante nuestra consideración, ésta cobijaría, en todo caso, a Juan Carlos Valenzuela y no al peticionario Julio Valenzuela. Este último sólo alberga una expectativa de intimidad con relación a su residencia y no**

VI

De manera pues, que a los fines del presente recurso, esto es, en la solución de la interrogante que tenemos que resolver en el mismo --a los efectos de si existía, o no, "causa probable" para expedir la orden de registro y allanamiento aquí impugnada-- venimos en la obligación de considerar que los agentes ocuparon, en el baúl del vehículo Lincoln, unos bultos que contenían la droga conocida como marihuana así como la información que le brindara Juan Carlos Valenzuela a los agentes a los efectos de que él había sacado dichos bultos de la residencia de su hermano Julio Valenzuela, a petición de éste.

Siendo ello así, no hay duda sobre el hecho de que, en esos momentos, los agentes del FBI tenían motivos fundados, o causa probable, para creer que en la residencia del peticionario Julio Valenzuela podrían encontrar aun más marihuana.

En consecuencia, los hechos que tuvo ante su consideración la magistrado federal que expidió la orden eran de tal naturaleza que permitían que una persona prudente y razonable pudiera creer que se había cometido la ofensa imputada, por lo que había causa probable que justificaba la expedición de una orden a estos efectos.

_____

**en cuanto al vehículo y residencia de su hermano Juan Carlos. En vista de ello, poco importa si la intromisión estuvo, o no, viciada, pues, repetimos, el peticionario Julio Valenzuela carece de "acción legitimada" para cuestionar la legalidad de la intervención que dio paso a que los agentes advinieran en conocimiento de la información que les proveyó los motivos fundados.**

Pueblo v. Santiago Avilés, ante. Recuérdese que si bien las meras sospechas no bastan para que exista causa probable, tampoco es necesario, para ello, establecer que --de hecho-- la ofensa imputada fue cometida. Es suficiente, para la expedición de la orden, que el deponente haya tenido base razonable para entender que se había violado la ley en el lugar a ser registrado o allanado. Pueblo v. Camilo Meléndez, ante.[13]

Habiendo cumplido dicha orden con los requisitos exigidos por nuestra Constitución, con relación a la validez de los registros y allanamientos, resulta irrelevante el que la misma haya sido expedida por un magistrado federal y no por un juez de nuestra jurisdicción.

Por los fundamentos anteriormente expuestos, se confirma la sentencia emitida por el Tribunal de Circuito de Apelaciones, revocatoria la misma de la resolución dictada por el Tribunal de Instancia. Se devuelve el caso

---

[13] **Aun cuando no se cuestiona, resulta adecuado mencionar, además, que un examen del mandato para autorizar el registro y allanamiento de la residencia de Julio Valenzuela refleja que el mismo cumple con las exigencias de forma y contenido según dispuestas tanto en la Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 231, como en su jurisprudencia interpretativa. Entre otras cosas, podemos advertir lo siguiente: que estuvo apoyada en juramento, Pueblo v. Santiago, 139 D.P.R. 361 (1995); consta la descripción de la casa cuyo registro se ordena, Pueblo v. Meléndez Rodríguez, 136 D.P.R. 587 (1994); y surgen de ella los hechos concretos que dieron base a la causa probable para su expedición, E.L.A. v. Coca Cola, 115 D.P.R 197 (1984).**

al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                          CC-2001-455    CERTIORARI

Julio Valenzuela Morel

    Acusado-peticionario

SENTENCIA

San Juan, Puerto Rico, a 10 de febrero de 2003

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, revocatoria la misma de la resolución dictada por el Tribunal de Instancia. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Hernández Denton y señor Fuster Berlingeri disintieron sin opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo