EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Eugenio González Cardona<br><br>Recurrido | Certiorari<br><br>2006 TSPR 40<br><br>167 DPR _____ |

Número del Caso: CC-2004-792

Fecha: 17 de marzo de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan Panel I

Juez Ponente:.

        Hon. Carlos Rivera Martínez

Abogados de la Parte Recurrida:

        Lcda. Rosa I. Ward Cid
        Lcdo. Jorge Gordon Menéndez

Oficina del Procurador General:

        Lcdo. Roberto J. Sánchez Ramos
        Procurador General

Materia: Infracción a la Sec. 145 (c) de la Ley de Contribuciones
        Sobre Ingresos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

 Peticionario

  v.         CC-2004-792

Eugenio González Cardona

 Recurrido


SENTENCIA

San Juan, Puerto Rico a 17 marzo de 2006.

En el presente caso, el Sr. González Cardona solicitó la supresión de unos comprobantes de retención de contribución sobre ingresos (formulario W-2) por entender que los mismos fueron obtenidos en contravención a la protección constitucional contra registros y allanamientos irrazonables. Alegó, en síntesis, que los referidos comprobantes fueron obtenidos en virtud de cierta información que el Estado obtuvo mediante la realización de un registro ilegal. En vista de ello, adujo que la información en cuestión constituía un *fruto del árbol ponzoñoso* inadmisible en los tribunales.

El foro de instancia suprimió los comprobantes basándose en que el señor González Cardona no tenía una expectativa razonable de intimidad sobre ellos. Inconforme, el Procurador General acudió ante el Tribunal de Apelaciones. Dicho foro confirmó la determinación del Tribunal de Primera Instancia pues entendió que la referida información estaba vinculada con el anterior registro ilegal y, por tanto, era un fruto del árbol ponzoñoso.

El Ministerio Público acudió ante nos solicitando la revocación del dictamen emitido por el foro apelativo. Luego de examinar detenidamente el asunto, este Tribunal se encuentra igualmente dividido en cuanto a cuál es el curso decisorio correcto en el caso de autos. Por ende, se expide el auto, se confirma el dictamen del Tribunal de Apelaciones y se devuelve el caso al foro de instancia para que se continúen los procedimientos.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió Opinión Disidente a la cual se unen las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez.


                                    Aida Ileana Oquendo Graulau
                                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                      CC-2004-792        Certiorari

Eugenio González Cardona

    Recurrido

Opinión Disidente emitida por el Juez Presidente señor Hernández Denton a la cual se unen las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez.

San Juan, Puerto Rico a 17 de marzo de 2006.

Por entender que, contrario a lo resuelto en la Sentencia emitida por este Tribunal, se le debió proveer al Ministerio Público la oportunidad de acreditar que la evidencia objeto de controversia era admisible conforme a la doctrina de descubrimiento inevitable, disentimos.

I.

Como parte de una investigación contra el Sr. Eugenio González Cardona por posibles

violaciones a la Ley de Contribución sobre Ingresos,[1] el Departamento de Hacienda (en adelante Hacienda) emitió un requerimiento de documentos (*subpoena duces tecum*) a la Cooperativa de Ahorro y Crédito Hermanos Unidos (en adelante Cooperativa). El propósito de dicha actuación era obtener ciertos documentos relacionados con las cuentas bancarias del señor González Cardona. Hacienda emitió el requerimiento sin haber obtenido una orden judicial para ello y sin notificárselo al señor González Cardona. La Cooperativa entregó los documentos solicitados.

Entre los documentos obtenidos por Hacienda se encontraban varios cheques emitidos a favor del señor González Cardona por su antiguo patrono, Thomas & Betts Caribe, Inc. A consecuencia de ello, Hacienda requirió a Thomas & Betts, mediante *subpoena duces tecum,* copia de los comprobantes de retención de ingresos del señor González Cardona correspondientes a los años 1989 a 1996. Dicho requerimiento tampoco contó con una orden judicial que lo autorizara y no fue notificado al señor González Cardona.

Así las cosas, en junio de 1997 se presentaron cargos contra el señor González Cardona por infracción a

---

[1] Los cargos en el caso de autos son presentados al amparo de la derogada Ley de Contribuciones sobre Ingresos. Dicha ley fue sustituida por el Código de Rentas Internas de 1994. Sin embargo, la referida legislación establece la antigua ley sigue vigente que para los períodos contributivos previos a 1995. *Véase* 13 L.P.R.A. sec. 8008.

la sección 145 (c) de la Ley de Contribución Sobre Ingresos. Oportunamente, mediante moción al amparo de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 234, la defensa solicitó la supresión de la evidencia obtenida mediante los requerimientos de evidencia emitidos por Hacienda. Fundamentó la petición en que, de conformidad con lo resuelto por nosotros en R.D.T. Construction v. Colón Carlo, 141 D.P.R. 424 (1996), la información había sido obtenida mediante un registro y allanamiento irrazonable en contravención al Artículo II, sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. II § 10, ya que no se le notificó al señor González Cardona el requerimiento en cuestión.

El foro de instancia suprimió la evidencia relacionada con las cuentas bancarias mas no los comprobantes de retención por entender que el señor González Cardona no podía tener una expectativa razonable de intimidad sobre ellos. Dicho dictamen fue confirmado por el foro apelativo. Ambas partes recurrieron ante nos. En esa ocasión decidimos revisar la resolución recurrida con el único propósito de  determinar si la norma que establecimos en RDT Construction, *supra,* debía aplicarse retroactivamente. En Pueblo v. González Cardona, 2001 T.S.P.R. 50, resolvimos dicha interrogante en la afirmativa y, por ende, concluimos que la información obtenida de la Cooperativa debía ser suprimida.

Devolvimos el caso al foro de instancia para la continuación de los procedimientos.

Luego de iniciado nuevamente el proceso en contra del señor González Cardona la defensa solicitó la supresión de los comprobantes de retención obtenidos mediante el *subpoena duces tecum* que Hacienda le cursara a Thomas & Betts. Argumentó, en síntesis, que la evidencia constituía un *fruto del árbol ponzoñoso* pues fue adquirida en virtud de los documentos que Hacienda obtuvo ilegalmente mediante el requerimiento emitido a la Cooperativa. El Ministerio Público se opuso y adujo que los comprobantes de retención eran admisibles pues, tratándose de documentos gubernamentales, el señor González Cardona no poseía una expectativa razonable de intimidad sobre ellos.

El Tribunal de Primera Instancia ordenó la supresión de la evidencia en cuestión. Inconforme, el Ministerio Público acudió ante el Tribunal de Apelaciones en donde reprodujo, en síntesis, los mismos planteamientos que esbozó ante el foro de instancia. El foro apelativo consideró aplicable al caso la doctrina de los *frutos del árbol ponzoñoso* y, por tanto, confirmó la determinación recurrida.

Aún inconforme, el Ministerio Público acude ante nos solicitando que revoquemos al foro apelativo y decretemos que los comprobantes de retención son admisibles ya que el señor González Cardona no tenía expectativa de

intimidad alguna sobre ellos. Emitimos una orden para mostrar causa por la cual no debíamos revocar la determinación del Tribunal de Apelaciones.

Este Tribunal, por encontrarse igualmente dividido, confirmó el dictamen del foro apelativo. A pesar de lo anterior, entendemos que el Tribunal de Apelaciones erró al suprimir la evidencia incautada sin permitirle al Ministerio Público acreditar que los comprobantes en cuestión eran admisibles conforme a la doctrina de descubrimiento inevitable. *Veamos.*

## II.

## A.

La Cuarta Enmienda de la Constitución de los Estados Unidos protege a las personas contra registros, allanamientos e incautaciones irrazonables. La Constitución del Estado Libre Asociado de Puerto Rico, por su parte, contiene una disposición análoga en su Art. II, sec. 10.

Estas cláusulas constitucionales protegen el derecho de intimidad del individuo en tanto le garantiza estar libre de intrusiones gubernamentales irrazonables con su persona, su hogar, sus papeles y otros efectos. Evidencia obtenida en contravención a esta disposición es inadmisible en los tribunales.

Dicha protección sólo se activa cuando los agentes gubernamentales han realizado un "registro" en sentido constitucional. Esto ocurre únicamente cuando la persona

que alega la violación alberga una expectativa razonable de intimidad sobre la evidencia registrada. Pueblo v. RDT Construction, *supra*. *Véase también*, Katz v. U.S., 389 U.S. 347 (1967). Conforme a esta doctrina, no basta que el individuo subjetivamente albergue una expectativa de intimidad sino que dicha expectativa debe de ser objetivamente aceptada por la sociedad como razonable. Pueblo v. Loubriel Serrano, 2003 T.S.P.R. 2. *Véase también*, Charles H. Whitebread & Christopher Slobogin, Criminal Procedure: An Analysis of Cases and Concepts, a la pág. 135 (Foundation Press, 2000).

Como consecuencia de ello, se ha reconocido que ciertas actividades gubernamentales no activan la protección constitucional contra registros irrazonables ya que no existe expectativa razonable de intimidad sobre la materia investigada. Así, por ejemplo, no se activa la cláusula constitucional cuando la evidencia es ocupada en un "campo abierto" o cuando la evidencia ocupada ha sido abandonada. *Véase* Ernesto L. Chiesa Aponte, I Derecho Procesal Penal de Puerto Rico y Estados Unidos, a la pág. 347 (Forum, 1991). Por último, también hemos señalado que un individuo no tiene expectativa razonable de intimidad frente a una entidad gubernamental en relación con el paradero de documentos emitidos por esa misma entidad. *Véase a* Pueblo v. Loubriel Serrano, *supra*.

La determinación de la existencia de una expectativa razonable de intimidad que active la protección de la

cláusula constitucional es una cuestión de umbral a ser determinada antes de entrar a considerar si la intervención gubernamental fue razonable. Por otro lado, una vez se constata la existencia de dicha expectativa, es necesario compararla con el interés que la actuación gubernamental pretendía adelantar. A mayor expectativa de intimidad, mayor ha de ser el interés que debe tener el estado para justificar su intervención. *Véase*, Ernesto L. Chiesa Aponte, I Derecho Procesal Penal de Puerto Rico y Estados Unidos, a la pág. 347 (Forum, 1991).

B.

La protección contra registros y allanamientos irrazonables concedida por nuestra constitución es de "factura más ancha" que la otorgada en virtud de la constitución federal. Pueblo v. Valenzuela Morel, 2003 T.S.P.R. 10. *Véase también*, Ernesto L. Chiesa, *Los derechos de los acusados y la factura más ancha*, 65 Rev. Jur. U.P.R. 83 (1996). Esto responde a que, en la zona del derecho de intimidad, nuestra constitución concede más derechos que su homóloga federal. RDT Construction, *supra*.

Al respecto, en el pasado hemos concedido mayor protección en las siguientes instancias: (1) registro de vehículo como incidental a un arresto, Pueblo v. Malavé, 120 D.P.R. 470 (1988), (2) registro de la persona como incidental a un arresto, Pueblo v. Dolce, 105 D.P.R. 422 (1976), (3) interceptación de comunicaciones telefónicas,

Puerto Rico Telephone Co. v. Martínez, 114 D.P.R. 328 (1983), e (4) incautación de documentos privados sometidos a la custodia de instalaciones bancarias, RDT Construction, *supra*.

Este último caso resulta particularmente pertinente para resolver la controversia que tenemos ante nos. Allí expresamente rechazamos la norma federal de U.S. v. Miller, 425 U.S. 435 (1976) mediante la cual se establecía que una persona que voluntariamente entrega sus documentos a una institución bancaria pierde cualquier expectativa legítima de intimidad sobre ellos. Amparándonos en la *factura más ancha* de nuestra constitución concluimos, contrario a lo resuelto en Miller, *supra*, que los clientes de los bancos "tienen una expectativa legítima de que [la institución] no...divulgará [la] información a terceros sin su consentimiento". RDT Construction, *supra*, a la pág. 438. Por tal razón, le reconocimos legitimación activa a los depositantes para cuestionar la legalidad de un *subpoena duces tecum* emitido por la Oficina del Contralor solicitándole al banco la entrega de cierta información sobre sus cuentas privadas.

Resolvimos, por consiguiente, que la persona cuya cuenta se pretende investigar debe ser notificada de la orden de requerimiento de documentos para que tenga la oportunidad de cuestionar la legalidad de la intervención gubernamental. Posteriormente aclaramos que la entidad

investigadora puede prescindir de realizar la notificación **siempre y cuando haya obtenido una orden judicial para registrar los documentos bancarios en cuestión**. RDT Construction v. Colón Carlo II, 141 D.P.R. 861 (1996), a la pág. 864. Por último, también hemos precisado que el caso es distinto cuando los documentos solicitados por el estado fueron emitidos por el propio gobierno. En estos casos, como señalamos anteriormente, el individuo no puede cuestionar la actuación gubernamental pues no posee una expectativa razonable de intimidad sobre dichos documentos. *Véase a* Pueblo v. Loubriel Serrano, *supra*.

C.

En virtud de la doctrina de los *frutos del árbol ponzoñoso*, la protección contra registros irrazonables acarrea no sólo la inadmisibilidad de la evidencia ilegalmente ocupada sino también la de cualquier prueba estrechamente vinculada con la intervención ilegal inicial. *Véase a* Pueblo v. Serrano Cancel, 148 D.P.R. 173 (1999), a la pág. 189. La doctrina tiene el propósito de asegurar que el efecto disuasivo de la regla de exclusión no sea socavado mediante la admisibilidad de evidencia que es un fruto de una intervención ilegal previa. Whitebread & Slobogin, *supra*, a la pág. 37.

La referida doctrina puede, incluso, culminar en la exclusión de evidencia que, a pesar de haberse procurado legalmente, está de algún modo vinculada a una previa

actuación ilegal del estado. Ello porque lo contrario fomentaría "la violación de la protección contra registros irrazonables (mediante la realización de un arresto ilegal, por ejemplo) con la esperanza de obtener evidencia de otra manera admisible (una confesión subsiguiente [siguiendo los parámetros de *Miranda]*)". Whitebread & Slobogin, *supra*, a la pág. 37 (traducción nuestra).

Por otro lado, un fruto es admisible cuando se cumple con los requisitos de cualquiera de las siguientes tres doctrinas: (1) doctrina del vínculo atenuado, (2) doctrina de la fuente independiente, y (3) doctrina del descubrimiento inevitable. La primera permite que se admita como evidencia aquella **prueba cuyo vínculo con la conducta ilegal es tan atenuado** que ya no está maculada por la ilegalidad inicial. El ámbito de aplicación de la doctrina del vínculo atenuado depende de tres factores, a saber: (1) el propósito y la intensidad de la conducta ilegal, (2) la "proximidad temporal" entre la conducta ilegal y la obtención del fruto, y (3) la existencia de circunstancias o eventos interventores entre la ilegalidad inicial y la obtención del fruto. *Véase a* Brown v. Illinois, 422 U.S. 590 (1975). *Véase también a* Whitebread & Slobogin, *supra*, a las págs. 39 y 40. Cada uno de los factores es importante mas ninguno de ellos por sí solo resulta determinante para establecer la admisibilidad de la evidencia.

La regla de exclusión tampoco es aplicable cuando el estado demuestra que la evidencia fue obtenida en virtud de una **fuente independiente** de la intervención ilegal. El propósito de admitir evidencia que cumple con los requisitos de esta doctrina es asegurar que "el ministerio público no sea puesto en peor posición [que en la que estaba previo a la intervención ilegal] sencillamente por razón de una previa actuación estatal ilegal". Murray v. U.S., 487 U.S. 533 (1988). Cuando la evidencia es obtenida mediante una fuente independiente a la actuación ilegal no hay "mácula" alguna que atenuar y, por tanto, la prueba incautada es admisible ya que, estrictamente, no constituye un fruto del árbol ponzoñoso. *Véase a* Chiesa, *supra*, a la pág. 319. *Véase también a* Whitebread & Slobogin, *supra,* a la pág. 42.

Los frutos también son admisibles cuando la prueba cuya supresión se solicita **inevitablemente hubiese sido descubierta** sin tomar en cuenta la información obtenida mediante el registro ilegal. Al igual que la doctrina de fuente independiente, el propósito de la regla de descubrimiento inevitable es evitar poner al estado en peor posición de la que estaba antes de la actuación ilegal. *Véase* Nix v. Williams, 467 U.S. 431 (1984). *Véase también a* Chiesa, *supra*, a las págs. 321-325. La doctrina de descubrimiento inevitable constituye una variación de la regla de la fuente independiente. LaFave, Israel & King, II Criminal Procedure, secc. 9.3(e). Se diferencia

de ella, no obstante, en cuanto la cuestión central no es si el estado **obtuvo** la evidencia mediante una fuente independiente sino si inevitablemente la **hubiese obtenido** a pesar de la previa intervención ilegal. LaFave, et al, *Id.*. Nix v. Williams, *supra*.

Para que se admita evidencia conforme a la doctrina de descubrimiento inevitable es necesario que el estado demuestre que cumplió con los siguientes criterios: (1) que el gobierno estaba realizando una investigación legal que seguramente hubiera producido la misma evidencia que fue obtenida como fruto de la intervención ilegal, (2) que la investigación era conducida por agentes distintos a los que cometieron la ilegalidad, y (3) que la investigación estaba llevándose a cabo con anterioridad a la actuación ilegal. *Véase a* Whitebread & Slobogin, *supra,* a la pág. 46. *Véase también a* U.S. v. Rullo, 748 F. Supp. 36 (1990). Por otro lado, la información también debe ser admitida cuando se logra evidenciar que la evidencia seguramente hubiese sido obtenida posteriormente en virtud de algún procedimiento estandarizado o rutinario.[2] LaFave, *supra,* secc. 11.4.

Por último, sólo nos queda señalar que la doctrina de los frutos del árbol ponzoñoso opera de forma distinta dependiendo del tipo de fruto obtenido. Es por ello que el análisis varía según el fruto de la actuación ilegal

---

[2] Nos referimos a procedimientos estandarizados como registros de inventario, registros en aeropuertos o registros en las fronteras.

sea una confesión, una identificación o el descubrimiento de un testigo. *Véase a* LaFave, *supra,* secc. 11.4(b)-(j). *Véase también a* Whitebread & Slobogin, *supra*, a las págs. 39-42.    Así, usualmente se admite la evidencia cuando el fruto es el descubrimiento de un testigo ya que, como señaló el Tribunal Supremo Federal, "los testigos no son como revólveres o como documentos que permanecen ocultos a la vista hasta que uno rebusca en un sofá o abre un gabinete para almacenar efectos". U.S. v. Ceccolini, 435 U.S. 268 (1974), a la pág. 276 (traducción nuestra). Esto se debe a que, en muchas ocasiones, los testigos están disponibles para ser cuestionados en cualquier momento e, inclusive, cooperan voluntariamente con la investigación estatal. La consecuencia de ello es que se torna mucho más fácil probar que los agentes de todas maneras hubiesen advenido en conocimiento de la identidad del referido testigo.

A la luz de esta normativa, pasemos a examinar el caso ante nos.

### III.

El Ministerio Público alega que los comprobantes de retención de contribución sobre ingresos son admisibles toda vez que el señor González Cardona no tenía una expectativa razonable de intimidad sobre ellos. Aduce, por lo tanto, que la actuación gubernamental no constituyó un "registro" susceptible de activar la

protección constitucional contra registros y allanamientos irrazonables. No le asiste la razón.

Si bien es cierto que, conforme a lo resuelto por nosotros en Pueblo v. Loubriel Serrano, *supra*, el señor González Cardona no tiene expectativa legítima de intimidad respecto a un formulario W-2 cuando es solicitado por Hacienda, no es menos cierto que el estado obtuvo la información sobre sus ingresos en virtud de que descubrieron la identidad de su patrono mediante el *subpoena duces tecum* que ilegalmente le cursaron a la Cooperativa. Por ello, el descubrimiento de la identidad del patrono del señor González Cardona constituye un *fruto del árbol ponzoñoso*.[3]

Por otro lado, la defensa alega que el foro apelativo actuó correctamente al suprimir la evidencia pues en el caso de autos no se satisfacían los requisitos de ninguna de las tres excepciones a la doctrina de los *frutos*. Tampoco le asiste la razón.

El fruto en este caso es el descubrimiento de la identidad del patrono del señor González Cardona. Según hemos explicado, cuando el fruto obtenido es la identidad de un testigo generalmente se admite la evidencia en virtud de la doctrina de descubrimiento inevitable. Ello

---

[3] Sería un error considerar que el fruto en este caso fueron los formularios W-2 ya que el estado nunca hubiese podido obtenerlos **a no ser por el descubrimiento de la identidad del patrono producto del requerimiento que ilegalmente le cursaron a la cooperativa**. Por tal razón, el verdadero fruto es la identidad del patrono y los comprobantes de retención son, por así decirlo, un "fruto del fruto".

porque los testigos están disponibles para ser cuestionados en el momento en que el estado lo requiera como parte de su investigación. Por otro lado, la identidad de un testigo es considerablemente más difícil de ocultar que otro tipo de evidencia como armas, drogas o documentos. Por ende, es posible que en el caso de autos Hacienda eventualmente hubiese descubierto la identidad del patrono. Dicho dato sería obtenible mediante técnicas tan sencillas como preguntarle a amigos o familiares cercanos al señor González Cardona acerca de cual fue su lugar de trabajo para las fechas en cuestión. En fin, es probable que el aparato investigativo del estado hubiese producido dicha información en un período relativamente corto de tiempo.

Por último, no nos cabe duda de que en el caso de autos el estado cumplió con dos de los tres criterios requeridos para establecer la excepción de descubrimiento inevitable. El primer criterio se satisface ya que, como acabamos de señalar, el gobierno estaba realizando una investigación mediante la cual seguramente hubiesen advenido en conocimiento de la identidad del patrono. De otra forma, el tercer criterio también se cumplió ya que la investigación estatal contra el señor González Cardona estaba llevándose a cabo con anterioridad a la actuación ilegal. Sólo nos queda determinar si la referida investigación era conducida por agentes distintos al que ilegalmente le cursó el *subpoena duces tecum* a la

Cooperativa. A pesar de que del expediente surge que la División  de Evasiones Contributivas estaba a cargo de investigar el caso, no nos es posible determinar si algún agente distinto al que actuó ilegalmente colaboró con la referida investigación.

Por ende, contrario a lo resuelto en la Sentencia emitida por este Tribunal, devolveríamos el caso al foro de instancia para proveerle al Ministerio Público la oportunidad de establecer que seguramente hubiesen descubierto la identidad del patrono mediante una investigación llevada a cabo por un agente distinto al que emitió el requerimiento ilegalmente.


                                        Federico Hernández Denton
                                        Juez Presidente