La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
El presente recurso otorga a este Tribunal la oportunidad de resolver si el sometimiento de un equipaje a un examen de olfato canino realizado para detectar sustancias controladas por un can entrenado para tal fin, constituye un registro al amparo de la Sec. 10 del Art. II de la Constitución de Puerto Rico, L.P.R.A., Tomo 1. Luego de haber realizado un detenido examen de la controversia presentada ante nosotros, resolvemos que el examen de olfato canino realizado sobre el equipaje de la parte recurrida no fue un registro en el sentido que da la Constitución. A su vez, resolvemos que el registro ulterior a la marca positiva del can fue razonable porque se trata de una situación de necesidad especial para el Estado, ya que los agentes del orden público tenían una sospecha individualizada razonable de que el contenido del equipaje registrado contenía narcóticos. Al así colegir, se armonizan los intereses en pugna en una controversia de esta índole, a saber, la protección constitucional contra registros y allanamientos irrazonables como medida preventiva para proteger el derecho a la intimidad versus el interés del Estado en combatir la criminalidad.
i—f
Expondremos brevemente los hechos esenciales que dieron génesis a la controversia que hoy toca resolver.
El Ministerio Público presentó unas acusaciones contra los recurridos Amaury Díaz Medina y Gerardo Bonano Pérez por violación al Art. 401 de la Ley Núm. 4 de 23 de junio de 1974, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. see. 2401. Se les acusó por posesión de catorce kilos de cocaína con la intención de distribuirla.
Previo a la celebración del juicio en su fondo, Amaury *606 Díaz Medina (Díaz Medina) presentó una Moción Solicitando la Supresión de Evidencia. En el escrito, Díaz Medina solicitó la supresión de la evidencia incautada alegando que ésta había sido ocupada ilegalmente por no mediar una orden para el registro supuestamente realizado. Evaluado el petitorio, el Tribunal de Primera Instancia celebró una vista de supresión de evidencia a la cual compareció como único testigo el agente Nelson Rosado Cintrón, adscrito a la División de Drogas y Narcóticos del municipio de Fajardo.
El agente Rosado Cintrón declaró que, previo a la intervención con los acusados, su Supervisor había recibido varias confidencias por la vía telefónica respecto a un cargamento de drogas que Aduana Federal había recogido al norte de la isla municipio de Culebra. Luego de corroborar esta información con un sargento del Task Force de Aduana Federal, el declarante se trasladó a Culebra el 6 de diciembre de 2003. Una vez el agente Rosado Cintrón llegó a Culebra, entrevistó a tres personas que le informaron que parte del cargamento había sido recogido por el recurrido Gerardo Bonano Pérez (Bonano Pérez) y otro individuo en una embarcación. También le informaron que, por el tamaño de la embarcación (incapaz de acomodar todo el cargamento), Bonano Pérez y su acompañante tuvieron que dejar en el agua parte del cargamento para recogerlo posteriormente, el que fue incautado por agentes federales.
El declarante testificó que ese mismo día, mientras se encontraba en Bayamón haciendo gestiones para ingresar a una persona en una facilidad correccional, recibió por teléfono otra confidencia en la que le indicaron que Díaz Medina había transportado de Culebra a Fajardo seis kilos de cocaína. El agente Rosado Cintrón declaró que conocía a Díaz Medina porque anteriormente había tenido que arrestarlo en un caso relacionado a sustancias controladas. Asimismo, el agente Rosado Cintrón señaló que el confidente le notificó que Díaz Medina había realizado otros viajes similares en esos días para transportar la cocaína que tenían almacenada en un lugar en Culebra.
*607 El agente Rosado Cintrón declaró que, siguiendo instrucciones de su supervisor, se trasladó a Culebra el 11 de diciembre de 2003, donde entrevistó a varias personas que confirmaron las confidencias previas. Indicó que al día siguiente pudo observar a Bonano Pérez llegar al lugar y recibir dinero de una de dos personas que se encontraban realizando una transacción de drogas. Alegó que Bonano Pérez llegó al lugar en una camioneta pick up modelo Ford 150 color negra y marrón, mientras que Díaz Medina se presentó en un vehículo Toyota. Continuó el declarante ex-poniendo que luego de dialogar, Bonano Pérez sacó de la parte de atrás de la Ford dos paquetes con cinta adhesiva color gris y se los entregó a Díaz Medina, quien los colocó en un bulto color azul y se marchó del lugar.
Al observar lo acaecido, el agente Rosado Cintrón siguió a Díaz Medina hasta Villa Flamenco, donde observó que éste se estacionó al lado de una casa ubicada frente al aeropuerto de Culebra. Declaró que Díaz Medina se bajó del vehículo Toyota y sacó del baúl el bulto color azul y lo llevó dentro de la casa.(1) Al informar lo sucedido a su supervisor, éste le ordenó preparar una Declaración Jurada para así obtener una orden de registro y allanamiento de la mencionada residencia. Así las cosas, el declarante relató que el 13 de diciembre de 2003 salió de Culebra y que, al llegar a la División de Drogas, recibió una confidencia telefónica de que los acusados se hallaban en el aeropuerto de Culebra y que se disponían a viajar hasta Fajardo con tres bultos llenos de cocaína. Según el agente Rosado Cintrón, a los quince minutos lo volvieron a llamar para informarle que los acusados habían conseguido un vuelo y que se disponían a abordar el avión. El confidente supuestamente describió la vestimenta que llevaban puesta los recurridos.
*608 Continuó su testimonio atestando que realizadas las gestiones con su supervisor, éste le indicó que consiguiera al agente Daniel Marín, manejador de un perro de la Uni-dad Canina. Al llegar a la división, el agente Daniel Marín fue informado de las confidencias y salió junto al agente Rosado Cintrón hacia el aeropuerto, llevando consigo un can. El agente Rosado Cintrón declaró que, una vez llegó al aeropuerto, observó a Díaz Medina con un bulto azul oscuro y una bolsa blanca de supermercado. Testificó que tan pronto Díaz Medina vio al agente acercarse, soltó el bulto azul y lo colocó pegado a una pared de la oficina de Aduana Federal, previo a sentarse en el primer asiento de una hilera de asientos en el aeropuerto. Según la declaración del agente, éste le pidió a Díaz Medina que se levantara, pero no le hizo caso. Declaró que mientras tanto, de frente hacia él venía caminando Bonano Pérez con dos bultos en las manos. El agente Rosado Cintrón testificó que Bonano Pérez tiró uno de los bultos junto al bulto de Díaz Medina (pegado a la pared) y el otro se lo quedo consigo. El agente Rosado Cintrón procedió a preguntarle a Bonano Pérez si le daba permiso para registrar el bulto que traía, a lo que éste contestó que no tenía ningún problema. De esta forma, Bonano Pérez colocó el bulto que tenía consigo al lado del asiento donde se encontraba sentado Díaz Medina.
El agente Rosado Cintrón comenzó a registrar el bulto de Bonano Pérez y, estando en dicho ejercicio, el agente Daniel Marín llegó con el can llamado Pirata, y se dirigieron donde estaban los bultos que Bonano Pérez y Díaz Medina habían soltado en el piso. El agente Marín le dio una instrucción al can, lo haló y el perro siguió olfateando. El perro volvió a los bultos marcando positivo.
Esto ocasionó que el agente Rosado Cintrón soltara el bulto que se encontraba en el asiento y procediera a registrar los que se encontraban en el piso. El agente declaró que al abrir el bulto que había soltado Díaz Medina, encontró debajo de una ropa el primer kilo de cocaína que estaba *609 envuelto en cinta adhesiva color gris.(2) Después de la identificación de las sustancias controladas, el agente Rosado Cintrón declaró que puso bajo arresto a Díaz Medina y a Bonano Pérez y que les leyó las advertencias legales. Finalizó su testimonio aclarando que en la División de Drogas se hizo un registro más profundo y se encontró siete kilos de cocaína en cada uno de los dos bultos incautados.
El Tribunal de Primera Instancia declaró “con lugar” la Moción Solicitando la Supresión de Evidencia. Expresó que no existían los motivos fundados para realizar un registro sin una orden judicial. Inconforme, el Procurador General, en representación del Pueblo de Puerto Rico, acudió al Tribunal de Apelaciones.
El foro apelativo denegó expedir el auto de certiorari solicitado por entender que el Tribunal de Primera Instancia no había errado al suprimir la evidencia. Entendió el tribunal a quo que el registro realizado por el agente Rosado Cintrón había sido irrazonable. Inconforme, el Procurador General acude ante nos.
El Procurador General plantea ante este Foro, inter alia, que incidió el foro apelativo al resolver el caso de autos aplicando la figura del registro incidental a un arresto, cuando procedía resolver que someter los bultos al olfato de un can no constituye un registro. Sostiene, a su vez, que aplica la norma de evidencia a plena vista u olfato, por lo que no era necesaria la orden judicial previa para el registro de los bultos. Finalmente, plantea que ese registro motivó el arresto de los recurridos conforme a la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
A contrario sensu, los recurridos sostienen que la intervención estatal configuró un registro irrazonable porque se llevo a cabo sin una orden judicial, en ausencia de motivos fundados suficientes. Por lo tanto, arguyen que los foros inferiores no erraron al suprimir la evidencia incautada.
Vista la petición de certiorari, acordamos expedir. Con el *610 beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
La controversia en el caso de autos comporta un carácter dual. En primer lugar, nos toca resolver si el examen de olfato canino sobre los bultos de los recurridos Díaz Medina y Bonano Pérez constituye un registro bajo el palio de nuestra Constitución. En segundo lugar, y consustancial con lo primero, debemos determinar si la intervención posterior a la marca positiva del can es un registro en sentido constitucional y, de serlo, si fue razonable, pese a haberse llevado a cabo sin una orden judicial. Conforme hemos mencionado, la respuesta a la primera interrogante es en la negativa y la de la segunda es en la afirmativa.
Previo a entrar en el análisis de las controversias planteadas, debemos enfatizar que este caso vuelve a protagonizar la convergencia entre dos intereses primordiales en nuestra sociedad que suelen ser asiduamente antagónicos. Nos referimos a la garantía individual contra registros y allanamientos irrazonables(3) vis-á-vis el interés del Estado en hacerle frente a la criminalidad en busca de una mejor calidad de vida para sus ciudadanos.
Tenemos presente que al realizar la ponderación, es necesario armonizar los intereses involucrados sin enajenarnos de los valores o principios latentes en nuestra sociedad y, al mismo tiempo, evitar convertirnos en intérpretes propiciadores de óbices que impidan el deber del Estado de luchar contra el crimen. Después de todo, como ya hemos expresado, “[e]n Puerto Rico, como regla general, la expectativa de intimidad que un individuo pueda tener en circunstancias relacionadas directamente con la comisión de un acto criminal es limitada. Así lo determinaron quienes *611 redactaron nuestra Constitución”. (Énfasis suprimido.)(4) Pueblo v. Santiago Feliciano, 139 D.P.R. 361, 390 (1995). Véanse, además: Pueblo v. Soto Soto, 168 D.P.R. 46 (2006); Pueblo v. Colón Rafucci, 139 D.P.R. 959, 966-967 (1996).
III
Tanto la Cuarta Enmienda de la Constitución de Estados Unidos como la Constitución de Puerto Rico protegen el derecho del pueblo contra registros, incautaciones y allanamientos irrazonables que puedan afectar sus personas, casas, papeles y efectos.(5) Véase O.E. Resumil de Sanfilippo, Práctica jurídica de Puerto Rico: derecho procesal penal, Orford, Ed. Equity, 1990, T. I, Vol. I, pág. 203.
La etiología de ambos preceptos constitucionales es proteger el derecho a la intimidad y dignidad del individuo *612 frente a las actuaciones arbitrarias e irrazonables del Estado. Pueblo v. Loubriel, Suazo, 158 D.P.R. 371 (2003); Pueblo v. Yip Berríos, 142 D.P.R. 386 (1997); Pueblo v. Santiago Alicea I, 138 D.P.R. 230 (1995); Pueblo v. Ramos Santos, 132 D.P.R. 363 (1992). Véase E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, T. I, Vol. I, pág. 283.
Sabido es que la mencionada garantía constitucional protege fundamentalmente a la persona y no a los lugares, y que para que esta garantía se active es necesario determinar si existe un interés personal del individuo sobre el lugar u objeto allanado, incautado o registrado, de modo que exista una expectativa razonable de intimidad. Pueblo v. Loubriel, Suazo, supra; E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394 (1983). Además, la protección contra registros irrazonables se acciona solamente cuando los agentes gubernamentales realizan un “registro” en sentido constitucional. Esto ocurre cuando la persona que alega la violación alberga subjetivamente una expectativa legítima de intimidad que la sociedad reconoce como razonable. Pueblo v. González, 167 D.P.R. 350 (2006). La cuestión central es si la persona tiene un derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete. Id.; Pueblo v. Soto Soto, supra; Pueblo v. Bonilla, 149 D.P.R. 318 (1999); Pueblo en interés menor N.O.R., 136 D.P.R. 949 (1994); Kyllo v. United States, 533 U.S. 27 (2001); Katz v. United States, 389 U.S. 347 (1967).
Como consecuencia de este principio, se ha reconocido que ciertas actividades gubernamentales no activan la protección constitucional contra registros irrazonables, ya que no existe una expectativa razonable de intimidad sobre la materia investigada. Así, por ejemplo, no se activa la cláusula constitucional cuando la evidencia es ocupada en un “campo abierto” o cuando la evidencia ocupada ha sido abandonada. Pueblo v. Ortiz Martínez, 116 D.P.R. 139 (1985). Véase Chiesa, op. cih, Vol. 1, pág. 347. Tampoco se *613 activa la protección constitucional cuando se utilizan binoculares para observar el campo abierto frente a una residencia. Pueblo v. Soto Soto, supra.
La determinación de la existencia de una expectativa razonable de intimidad que active la protección de la cláusula constitucional es una cuestión de umbral que debe determinarse antes de considerar si la intervención gubernamental fue razonable. Pueblo v. González, supra. Una vez se determina la configuración de un registro por parte del Estado, entonces el siguiente peldaño consiste en realizar un balance de intereses entre esa expectativa y los intereses estatales que hayan motivado la actuación estatal. Pueblo v. Cedeño Laclaustra, 157 D.P.R. 743, 788 (2002); Pueblo v. Yip Berríos, supra; Pueblo v. Dolce, 105 D.P.R. 422, 434-435 (1976).
En síntesis, lo primero que se debe auscultar y analizar es si, en esencia, ha ocurrido o no un registro por parte del Estado para que se extienda la protección constitucional aludida. Si la conclusión del análisis es que no ha habido un registro, vano sería aplicar la doctrina de balance de intereses, puesto que no se activaría la garantía constitucional contra registros y allanamientos irrazonables.
En lo relativo al equipaje de una persona, se ha sostenido y reconocido que un individuo alberga una expectativa razonable de intimidad sobre éste, aunque esta ex-pectativa sea menor que la que se puede tener en el hogar.(6) Robbins v. California, 453 U.S. 420 (1981); Arkansas v. Sanders, 442 U.S. 753 (1979); United States v. Chadwick, 433 U.S. 1 (1977).
Por otro lado, para hacer asequible la protección constitucional contra registros y allanamientos irrazonables, la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, funge como vehículo procesal que permite la supre *614 sión de la evidencia obtenida en contravención con un registro sin una orden judicial. Un registro sin una orden judicial se presume irrazonable e inválido, y solamente podría ser considerado razonable si concurren las circunstancias que la jurisprudencia ha reconocido por vía de excepción. Pueblo v. Acevedo Escobar, 112 D.P.R. 770, 775— 776 (1982); Pueblo v. Dolce, supra.(7)
IV
A. De entrada, y a la luz de la normativa reseñada, en el caso de autos debemos determinar si en efecto el examen de olfato canino sobre el equipaje de una persona constituye un registro en sentido constitucional. Como ya señalamos, tal determinación es una cuestión de umbral, necesaria para saber si hay que realizar un balance de intereses entre la expectativa a la intimidad que se albergue sobre el contenido del equipaje y el objetivo del Estado. Por eso, establecer lo contrario (que el examen de olfato canino no es un registro), hace inmaterial realizar el balance de intereses, porque no habría expectativa de intimidad que proteger.
Desde hace más de veinticinco años, la jurisprudencia federal ha reconocido y sigue afirmando que el examen de olfato canino sobre el equipaje o bultos de una persona no constituye un registro que amerite la activación de la protección constitucional contra registros y allanamientos irrazonables.(8) Esta normativa tuvo su albor en el caso United States v. Place, 462 U.S. 696 (1983).
En este caso, Raymond J. Place hacía turno para comprar un pasaje en el aeropuerto internacional de Miami, con destino a Nueva York. Su comportamiento levantó sos *615 pechas a unos agentes del orden público, quienes, posteriormente, mientras Place se dirigía a la puerta de su avión, le requirieron su boleto e identificación. Place le mostró lo solicitado y consintió a que registraran sus bultos, pero por razón de que su vuelo estaba a punto de partir, los agentes no hicieron el registro. Una vez llegó a Nueva York, agentes del Drug Enforcement Administration (DEA) lo estaban esperando al haber sido notificados desde Florida (por los primeros agentes) que la dirección provista por Place para comprar su boleto y la que llevaba el equipaje no existían y que, a su vez, el teléfono que había informado como suyo pertenecía a una tercera dirección. Place se negó a consentir el registro de sus bultos por los agentes. Los agentes retuvieron los bultos, y transcurrieron noventa minutos hasta que se les realizaron y se les completó un examen de olfato canino que arrojó positivo. Finalmente, obtuvieron una orden para registrarlos, encontrando cocaína. Así las cosas, Place fue arrestado.
En la evaluación del caso, el Tribunal Supremo federal palmariamente reafirmó que todo ciudadano tiene una ex-pectativa razonable de intimidad, protegida por la Cuarta Enmienda, sobre su equipaje. United States v. Place, supra, pág. 707. Véase United States v. Chadwick, supra, pág. 7. Empero, también sostuvo, en lo pertinente, que: (1) el olfato de un perro entrenado para detectar sustancias controladas no requiere abrir el equipaje; (2) tampoco ex-pone cosas que no son contrabando, por lo que éstas permanecerán ocultas a la vista del público; (3) la manera en que la información es recopilada por esta técnica investigativa es menos intrusiva que un registro usual; (4) el olfato solamente revela la presencia o no de narcóticos (contrabando) y por ello la información recibida es limitada; (5) este descubrimiento limitado evita que el propietario del equipaje sea objeto de vergüenza o inconvenientes que pueden ocasionar otros métodos investigativos, y (6) en esencia, el examen de olfato canino es una técnica investigativa sui generis y por tales fundamentos la exposición del equipaje, localizado en un área pública y por un perro entre *616 nado, no es un registro a la luz de la Cuarta Enmienda. United States v. Place, supra, pág. 707.(9)
Un año después, en United States v. Jacobsen, 466 U.S. 109 (1984), el Tribunal Supremo federal resolvió, en concordancia con lo resuelto en United States v. Place, supra, que la intervención de los agentes del orden público que no compromete ningún interés legítimo de privacidad, no es un registro conforme la Cuarta Enmienda. Por lo tanto, el interés que pueda tener una persona en poseer contrabando o sustancias controladas no se considera legítimo. Es decir, la acción gubernamental que solamente revela la posesión de contrabando, no compromete ningún interés legítimo de privacidad. Por eso, la expectativa que una persona en particular pueda albergar con respecto a que algunas cosas (como los narcóticos) no lleguen al conocimiento de los agentes del orden público, no es sinónimo del interés en la privacidad que la sociedad está preparada para reconocer como razonable. United States v. Jacobsen, supra, págs. 122-123.
Posteriormente, el máximo Foro federal ratificó lo sostenido en United States v. Place, supra, en los casos Indianapolis v. Edmond, 531 U.S. 32 (2000) e Illinois v. Caballes, 543 U.S. 405 (2005), extendiendo su aplicación al contexto de los automóviles que son detenidos legalmente. En el primer caso señaló que, igual a United States v. Place, supra, el examen de olfato canino en el exterior de un automóvil no requiere entrar al carro y no está diseñado para revelar ninguna información, excepto la presencia o ausencia de narcóticos, y que el olfato de un can que solamente camina alrededor de un carro es mucho menos intrusivo que un registro *617 usual. En el segundo, in pari materia, el tribunal tuvo la oportunidad de resolver si la Cuarta Enmienda requería una sospecha razonable para justificar la utilización de un perro con el propósito de olfatear un vehículo durante una detención vehicular válida. El Tribunal Supremo federal sostuvo contundentemente, inter alia, que el examen de olfato canino conducido durante una detención vehicular válida que no revela información alguna excepto la ubicación de alguna sustancia que ninguna persona tiene derecho a poseer,(10) no viola la Cuarta Enmienda, por lo que no se necesita una sospecha razonable para realizar dicho examen. Illinois v. Caballes, supra, págs. 408-410.(11)
Se ha interpretado que al aplicar el caso United States v. Place, supra, es irrelevante si el olfato positivo del can ocurre en un aeropuerto o si el oficial del orden público logra detectar el contrabando a plena vista. A contrario sensu, lo realmente determinante es si la persona que observa o el can que olfatea está legalmente presente cuando sus respectivos sentidos detectan evidencia incriminatoria. U.S. v. Esquilin, 208 F.3d 315, 318 (1er Cir. 2000); U.S. v. Reed, 141 F.3d 644, 649 (6to Cir. 1998).
Incluso antes y después de United States v. Place, supra, los tribunales federales han resuelto que el olfato de un can sobre el equipaje de una persona no constituye un *618 registro, porque la expectativa razonable de intimidad no se extiende al espacio de aire que los rodea. U.S. v. Garcia, 42 F.3d 604 (10mo Cir. 1994); United States v. Goldstein, 635 F.2d 356 (5to Cir. 1981); United States v. Fulero, 498 F.2d 748 (D.C. Cir. 1974). También, se ha interpretado que la naturaleza limitada y discriminatoria del olfato canino no constituye un registro bajo la Cuarta Enmienda de la Constitución federal. Jennings v. Joshua Independent School Dist., 877 F.2d 313, 316 (5to Cir. 1989). En síntesis, las cortes federales han sostenido que el examen de olfato canino sobre los bultos de las personas, automóviles, pertenencias de los estudiantes en una escuela, entre otros, no son un registro al amparo de la Cuarta Enmienda. Véanse: U.S. v. Quoc Viet Hoang, 486 F.3d 1156 (9no Cir. 2007); U.S. v. Carpenter, 406 F.3d 915 (7mo Cir. 2005); Doran v. Contoocook Valley School Dist., 616 F.Supp.2d 184 (D. N.H. 2009).(12) Como bien señala el comentarista John Wesley Hall, las cortes federales y estatales han permitido el exa *619 men de olfato canino de manera indiscriminada, tanto en los equipajes como en los automóviles. J.W. Hall, Search, and Seizure, 3ra ed., Virginia, Lexis Law Pub. Co., 2000, Vol. I, Sec. 9.21, pág. 674. Véanse: U.S. v. Quoc Viet Hoang, supra; U.S. v. Olivera-Mendez, 484 F.3d 505 (8vo Cir. 2007); U.S. v. Carpenter, supra; U.S. v. Morgan, 270 F.3d 625 (8vo Cir. 2001); U.S. v. Ward, 144 F.3d 1024, 1031 (7mo Cir. 1998); U.S. v. De Los Santos Ferrer, 999 F.2d 7 (1er Cir. 1993); U.S. v. Turpin, 920 F.2d 1377, 1385 (8vo Cir. 1990); State v. Wallace, 812 A.2d 291 (Md. 2002); People v. Ortega, 34 P.3d 986 (Colo. 2001); State v. Scheetz, 950 P.2d 722 (Mont. 1997); State v. Martinez, 925 P.2d 1125 (Idaho App. 1996).
A la luz de la diáfana normativa reseñada, este Tribunal entiende que United States v. Place, supra, y su correlativa interpretación, deben ser adoptados en nuestra jurisdicción. La afinidad entre el caso de autos y el de United States v. Place, supra, es manifiesta e innegable. Así, por ejemplo, el registro realizado en ambos casos no fue producto de una inspección rutinaria, sino de un proceso investigativo. En el caso de autos, al igual que en United States v. Place, supra, el examen de olfato canino sobre el equipaje se condujo porque había motivos fundados para creer que contenía narcóticos. En United States v. Place, supra, el examen de olfato canino se basó en la sospecha de los agentes surgida a raíz del encuentro e interrogatorio con el acusado y de su comportamiento. Es decir, lo que motivó a los agentes a realizar el examen de olfato canino sobre el equipaje de Raymond J. Place fue: (1) la información falsa y contradictoria que el acusado había proporcionado a las autoridades cuando le interrogaron y (2) el demeanor del acusado en el aeropuerto. En el caso de autos, los motivos para realizar el examen canino fueron las confidencias que el agente Rosado Cintrón recibió y corroboró. Añádase que, en ambos casos, el examen de olfato canino se llevo a cabo en un aeropuerto, que es un lugar público donde los oficiales y el can tenían derecho a estar. Además, fue en ese mismo lugar donde el can marcó positivo a sus *620 tancias controladas sobre las que, como hemos discutido, no existe ninguna expectativa de intimidad según preceptuado en la normativa federal. La única diferencia significativa que podemos apuntar es que en el caso de autos, distinto a United States v. Place, supra, no hubo detención de equipaje, porque los bultos sometidos al olfato del can estaban colocados contra la pared en el aeropuerto cuando el perro se acercó para olerlos.(13) Por lo tanto, es razonable colegir que el caso de autos es casi un alter ego de United States v. Place, supra. No vemos obstáculo fáctico que nos impida aplicar la normativa que emana de las decisiones emitidas por el Tribunal Supremo federal y sus respectivas interpretaciones (tanto por los tribunales federales como por los estatales), a la controversia traída a nuestra consideración.
No obstante lo anterior, somos conscientes de la primacía que en nuestro ordenamiento jurídico tiene el derecho a la intimidad y su protección contra registros y allanamientos irrazonables. Por consiguiente, para resguardar tal derecho, entendemos que lo sostenido en United States v. Place, supra, debe ceñirse al contexto del equipaje o los bultos de una persona en un lugar donde los canes y los agentes del orden público tengan derecho a estar. Por tal razón, deben concurrir las justificaciones expuestas por el Tribunal Supremo en dicho caso. Así, John Wesley Hall comenta holísticamente que, del razonamiento que hizo el Tribunal Supremo en el caso United States v. Place, supra, se deduce que el olfato canino podría constituir un registro *621 cuando es dirigido hacia una persona,(14) un grupo de personas(15) o cuando dicho examen pueda ser objeto de vergüenza o cause algún inconveniente en el contexto de una investigación particular. Hall, op. cit., pág. 667. Nótese que las circunstancias recién aludidas quedan fuera del ratio decidendi sobre el que se cimienta la decisión en United States v. Place, supra.
B. Aunque, como ya apuntamos, no existen obstáculos fácticos para incorporar en nuestra jurisdicción el precedente federal, no estamos ajenos al hecho de que se podrían esgrimir argumentos para rechazarlo jurídicamente. El más preeminente de todos es, a nuestro entender, el relacionado con el ámbito mínimo federal y su corolario de “factura más ancha”. Por eso, es necesario despejar el panorama para que la decisión que hoy tomamos no malogre la pretensión última y no caprichosa de este Tribunal de hacer justicia.
Sabido es que la aplicabilidad de un derecho constitucional federal constituye sólo el ámbito mínimo de ese derecho. Por eso, el Tribunal Supremo de un estado, incluyendo a Puerto Rico, puede interpretar su Constitución para darle a un derecho un ámbito mayor, lo que puede redundar en una protección mayor al individuo que la que reconoce la Constitución federal. Pueblo v. Dolce, supra. Como corolario de este principio, se ha reconocido que nuestra Carta de Derechos es de factura más ancha que la Constitución federal. López Vives v. Policía de P.R., 118 D.P.R. 219 (1987). Es decir, que al igual que los estados de la Unión, en Puerto Rico podemos ser más amplios y abarcadores que el Tribunal Supremo de Estados Unidos al interpretar una cláusula homologa de la Constitución federal. H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 974-975 (1993). De esta manera, hemos sostenido que *622 nuestra Constitución es más abarcadora que la Constitución federal en lo concerniente a la concesión de derechos, incluso el derecho a la intimidad. H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra; Pueblo v. Rivera Colón, 128 D.P.R. 672, 680 (1991); Pueblo v. Malavé González, 120 D.P.R. 470, 475 (1988). De esta forma, la Cuarta Enmienda de la Constitución federal, según interpretada por el Tribunal Supremo de Estados Unidos de América, constituye la protección mínima que los estados están obligados a reconocer. Rullán v. Fas Alzamora, 166 D.P.R. 742, 771 (2006).
Al amparo de esa realidad, en el caso de autos muy bien se podría obviar y rechazar por completo lo preceptuado por la jurisprudencia federal en torno al examen de olfato canino para detectar narcóticos en el equipaje de una persona, descansando en el reiterado principio de factura más ancha. Sin embargo, hacer abstracción de la normativa federal, basándonos en la factura más ancha de nuestra Carta de Derechos, nos parece innecesario y poco persuasivo. A contrario sensu, entendemos que el precedente federal reseñado debe regir en nuestra jurisdicción porque brinda equilibrio entre el interés estatal de combatir el crimen y el derecho a la intimidad que alberga todo ciudadano sobre sus pertenencias.
No negamos que nuestra Carta de Derechos tenga un alcance mayor de protección que la Constitución federal.(16) Después de todo, se trata de una Carta de Derechos aprobada más de un siglo después que el Bill of Rights de la Constitución de Estados Unidos. Véase, en general, E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 (Núm. 1) Rev. Jur. U.P.R. 83 (1996). De esta forma, y por mencionar alguna, la excepción de registro sin una orden, por ser incidental al arresto, en Puerto Rico ha sido objeto de una interpretación de factura más ancha. Véase íd., págs. 137-138.
*623 También ha ocurrido, empero, lo contrario. Es decir, que este tribunal ha omitido extender una interpretación de factura más ancha en cuanto a la protección contra registros y allanamientos irrazonables. De esta manera, en Pueblo v. Dolce, supra, este Foro adoptó los requisitos de registro a plena vista como excepción a un registro sin una orden, según se habían establecido en la jurisprudencia federal, sin ampliar el alcance del derecho a la intimidad. Véase Chiesa, supra, pág. 141. Asimismo, no puede hablarse de factura más ancha cuando se trata de evidencia abandonada, porque la garantía constitucional contra registros y allanamientos irrazonables no cubre estos objetos, por no existir una expectativa razonable de intimidad. Pueblo v. Ortiz Martínez, supra, págs. 144-145. Véase Chiesa, supra, pág. 140.(17) Tampoco hay factura más ancha cuando se trata de la evidencia en campo abierto. Véase E.L. Chiesa, Derecho Procesal Penal: Etapa Investigativa, Estados Unidos, Pubs. JTS, 2006, págs. 206-212.
Aún más, en el pasado y en relación con la protección contra registros y allanamientos irrazonables, esta Corte ha adoptado la jurisprudencia federal por ser persuasiva y aplicable a nuestra Constitución, rechazando flagrantemente una interpretación de factura más ancha. Pueblo v. Rivera Collazo, 122 D.P.R. 408 (1988). En este último caso se reconoció, como excepción a un registro válido sin una orden, el registro en casos de emergencia. Allí, este Tribunal expresó:
Aunque hemos resuelto reiteradamente que al interpretar el alcance de nuestras garantías contra registros e incautaciones podemos ir más allá de los límites de la Cuarta Enmienda,
... que nuestra Constitución goza de una vitalidad independiente de la Constitución de Estados Unidos, ... y que su interpretación no ha sido ni tiene necesariamente que ser históricamente paralela en todo sentido con la que se ha dado a la *624 Cuarta Enmienda, ... nos parece que dicha interpretación es sumamente persuasiva y aplicable a nuestra Constitución. (Énfasis suplido.) Pueblo v. Rivera Collazo, supra, págs. 418-419.
Como se desprende de lo anterior, no existe una clasificación omnímoda que delimite la aplicación de la factura más ancha en nuestro ordenamiento. Sin embargo, no debemos olvidar ni ser indiferentes a la intención de los forjadores de nuestra Constitución, cuando determinaron en su juicio, considerando siempre el mejor bienestar del pueblo, que “[l]as garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal”. 4 Diario de Sesiones de la Convención Constituyente 2567—2568 (1952).
De hecho, y con toda razón, el Honorable ex Juez Asociado del Tribunal Supremo Señor Negrón García ideó una norma interpretativa de la frase “factura más ancha” que intenta evitar la invocación automática de tal principio. Al respecto, el ex Juez Asociado Señor Negrón García señaló que
... la antedicha “factura más ancha” es descriptiva,, no prescriptiva. No debe dar lugar, irreflexivamente, a un proceso mediante el cual la norma constitucional puertorriqueña se determina mecánicamente, tomando como base el grado de protección a la intimidad establecido por la jurisprudencia del Tribunal Supremo federal y luego ensanchándolo. Que nuestra jurisprudencia establezca un grado mayor de protección que la federal es quizás predecible, pero no es ni debe ser un pre-requisito.
Nuestra Constitución requiere!,] no que automáticamente establezcamos una protección mayor que la federal, sino una protección fundamentada en los principios que acoge nuestra propia Carta de Derechos. Si el razonamiento esbozado en la jurisprudencia de otras jurisdicciones nos convence, es perfectamente apropiado acogerlo. (Énfasis suplido y en el original.) Pueblo v. Yip Berríos, supra, pág. 430 esc. 3, opinión disidente del Juez Asociado Señor Negrón García.
La doctrina en Puerto Rico parece estar de acuerdo con tal postura. Por ejemplo, la profesora Olga Elena Resumil ha manifestado: “[E]l Hon. Negrón García plantea una in *625 teresante norma interpretativa de la frase factura más ancha que merece alta consideración y, con la cual coincidimos (Enfasis en el original.) O.E. Resumil, Derecho Procesal Penal, 67 (Núm. 4) Rev. Jur. U.RR. 941, 953 (1998). Véase en general, además, Chiesa, supra.
Cabe señalar que existe un sinnúmero de jurisdicciones estatales que han acogido lo pautado por el Tribunal Supremo federal en United States v. Place, supra, rechazando una interpretación de factura más ancha, por entender que la normativa federal es apropiada. Uno de esos casos es State v. Scheetz, supra, en el cual el estado de Montana acogió la norma de United States v. Place, supra, al realizar mi balance entre el interés estatal y el derecho a la intimidad. Su razonamiento fue que, al igual que una persona no tiene expectativa legítima de intimidad sobre el color o peso del equipaje que lleve a un aeropuerto (lugar público), tampoco lo tiene cuando es olfateado. La corte del estado de Montana entendió que el examen de olfato canino sobre el equipaje no revelaba nada sobre los bienes de las personas, a no ser que fuera contrabando, por lo que el contenido del equipaje permanecerá privado. En fin, concluyó afirmando que la utilización de un can entrenado para detectar narcóticos sobre los equipajes de las personas no violaba el derecho a la intimidad ni constituía un registro conforme su Constitución. State v. Scheetz, supra, págs. 727-728.(18)
De igual forma, en Daniels v. Cochran, 654 So.2d 609 (Fla. 1995), y posteriormente en Lindo v. State, 983 So.2d 672 (Fla. App. 2008), el tribunal de Florida acogió y ratificó la normativa federal citando con aprobación el caso United States v. Place, supra. En ambos casos se resolvió que cuando se utiliza el examen de olfato canino sobre el equi *626 paje de una persona, dicha acción no constituye un registro al amparo de la Cuarta Enmienda. De hecho, en el caso Lindo v. State, supra, el tribunal fue más lejos, al determinar que la detención temporera de dos paquetes en un correo no era una detención que requiriera una sospecha individualizada razonable para tal actividad.(19)
A una conclusión similar llegó el Tribunal Supremo de Colorado en el caso People v. Wieser, 796 P.2d 982 (Colo. 1990), cuando tuvo que resolver si el examen de olfato canino llevado a cabo sobre el storage locker del acusado, que se encontraba en un lugar accesible para el público, era un registro bajo la Cuarta Enmienda de la Constitución federal. Allí, el Tribunal Supremo de Colorado sostuvo, de forma indubitada, que bajo la Constitución federal y bajo su Constitución, el examen de olfato canino en dicho contexto no es un registro.
En State v. Harris, 280 S.W.3d 832 (Tenn. Crim. App. 2008), el tribunal de Tennessee sostuvo que el examen de olfato canino alrededor de un vehículo que es detenido legalmente, tampoco es un registro en sentido constitucional que active la protección de la Cuarta Enmienda. Además, el tribunal, endosando lo resuelto en el caso Illinois v. Caballes, supra, expresó que no hacía falta una sospecha individualizada razonable para realizar el examen de olfato canino alrededor del vehículo detenido, ya que dicho vehículo fue detenido legalmente por violar una ley de tráfico. A la misma conclusión llegó el Tribunal de Apelaciones del estado de Arizona en el caso State v. Box, 73 P.3d 623 (Ariz. 2003), al concluir que el examen de olfato canino alrededor de un vehículo que es detenido válidamente no constituye un registro al amparo de la Cuarta Enmienda de la Constitución federal.
*627 De igual manera, en el caso Dowty v. State, 210 S.W.3d 850 (Ark. 2005), el Tribunal Supremo de Arkansas resolvió que realizar un examen de olfato canino alrededor de un vehículo que se encontraba estacionado en un lugar público no es un registro conforme a la Cuarta Enmienda. En dicho caso los acusados alegaron que el examen de olfato canino constituyó un registro porque los agentes que condujeron el procedimiento no tenían sospecha individualizada razonable de que, en efecto, en el carro había narcóticos. El Tribunal Supremo de Arkansas, citando con aprobación lo resuelto en United States v. Place, supra, y lo que habían resuelto distintos estados ante la misma controversia,(20) concluyó que como el examen de olfato canino no era un registro en sentido constitucional, no era necesario tener sospecha individualizada razonable para justificar el examen. Véase Vega v. State, 939 S.W.2d 322 (Ark. App. 1997).
A tal grado se ha extendido el acogimiento de lo preceptuado por el Foro federal en United States v. Place, supra, que en el caso People v. Jones, 755 N.W.2d 224 (Mich. App. 2008), el estado de Michigan resolvió que un examen de olfato canino conducido frente a la puerta de la residencia del acusado no constituyó un registro a la luz de la Cuarta Enmienda. La corte estatal sostuvo que el can estaba legalmente frente a la residencia cuando detectó las sustancias controladas. Además, señaló que no había expectativa de intimidad frente a la entrada de la residencia porque no tenía ninguna verja que impidiera llegar hasta ésta ni había ningún signo o letrero que le prohibiera a la gente entrar o acercarse a la propiedad.
En suma, la gran mayoría de los estados ha seguido el derrotero que fue pautado por la jurisprudencia del Tribunal Supremo de Estados Unidos, a los efectos de que el examen de olfato canino no constituye un registro al amparo de la Cuarta Enmienda de la Constitución federal.(21)
*628 Sostener que el examen de olfato canino sobre el equipaje de una persona es un registro, implicaría la necesidad de obtener una orden judicial previa para registrar o, como mínimo, exigir a los agentes del orden público una sospecha previa de que el equipaje a registrarse contiene material delictivo. Tal contención tornaría en fútil el uso de los canes. Así, por ejemplo, si los canes pudieran utilizarse únicamente para olfatear bultos cuando se tuviera la sospecha previa de que tal equipaje contiene material delictivo, el can no haría falta, ya que su provecho estriba precisamente en que pueden descubrir posible material delictivo sin las trabas de tener que conducir antes un registro o necesitar una sospecha previa para intervenir con el equipaje.
Por todo lo expresado, entendemos que la jurisprudencia federal relacionada con el caso de autos, es sumamente persuasiva y aplicable. No vemos razón meritoria para rechazar la utilización de los canes para olfatear equipaje o bultos de las personas sin que ello constituya un registro cuando se trata de supuestos donde los bultos ni siquiera son retenidos por los agentes del orden público y se encuentran en un lugar público donde los agentes y canes tienen derecho a estar. Rechazar lo resuelto por el Tribunal Supremo en United States v. Place, supra, y su posterior *629 progenie jurisprudencial, implica ponerle trabas innecesarias al Estado en la cada vez más ardua lucha contra el crimen.
Es imperativo destacar, nuevamente, que lo resuelto hoy en el caso de autos, debe limitarse al contexto fáctico que hemos analizado. Nuestra decisión no pretende dar un cheque en blanco a los agentes del Estado para que, por medio de la utilización de canes entrenados para detectar narcóticos, realicen ejercicios no enmarcados en lo aquí resuelto. Una vez más, como hemos discutido, sostenemos que el examen de olfato canino que se realice sobre el equipaje de una persona que se encuentra en un lugar público donde los agentes del estado y sus respectivos canes tienen derecho a estar, no es un registro en sentido constitucional.
C. Existe otro argumento que podría esbozarse como un conato para rechazar la adopción en nuestra jurisdicción del examen de olfato canino sobre el equipaje de una persona. Se trata del carácter tecnológico que caracteriza a un can entrenado para detectar narcóticos y que podría convertir a dicho perro en un instrumento demasiado intrusivo. Ciertamente, se ha reconocido que utilizar un can para propósitos investigativos está relacionado con la utilización de instrumentos tecnológicos que asisten los sentidos de un agente u oficial del orden público para detectar sustancias controladas. Véase, en general, W.R. La-Fave, Search and Seizure: A treatise on the Fourth Amendment, 4ta ed., Minnesota, West Publishing Co., 2004, Vol. I, Secs. 2.2(f) y 2.2(g). Véase, además, Hall, op. cit, Secs. 9.9-9.22.
Ahora bien, el hecho de que un can entrenado para detectar narcóticos tenga unas habilidades sensoriales más desarrolladas que las de un ser humano, no debe supeditar su utilización a detectar o investigar únicamente aquello que una persona podría detectar o investigar a través de sus sentidos. No debemos olvidar que aunque todo registro inherentemente incluye la utilización de los sentidos (tacto, gusto, olfato, etc.) no toda utilización de los sentidos *630 constituye un registro. Véase U.S. v. Nicholson, 144 F.3d 632, 636 (10mo Cir. 1998). Por lo tanto, limitar la utilización de un can a explorar aquello que el hombre solamente podría descubrir con sus propios sentidos, es limitar de forma generalizada la ayuda que puedan dar al Estado estos instrumentos para combatir el crimen y, por otro lado, desarticular la noción básica de que no toda utilización de los instrumentos tecnológicos constituye un registro en sentido constitucional.(22) Como bien ha señalado el Tribunal Supremo federal: “la mera existencia de los avances tecnológicos no implica la protección de la Cuarta Enmienda, sino más bien la explotación de dicha tecnología.” (Traducción nuestra). United States v. Karo, 468 U.S. 705, 712 (1984).
Así, y en lo pertinente al caso de autos, se ha resuelto que no toda técnica de investigación que revele algo acerca del contenido del equipaje de una persona constituye un registro. United States v. Place, supra; U.S. v. Lovell, 849 F.2d 910 (5to Cir. 1988). Además, en el caso del olfato canino, el hecho de que un perro como detector de olores sea más habilidoso que una persona, no convierte en ilegal el olfato de dicho animal, pues al igual que la evidencia a plena vista de un oficial puede ser registrada sin una orden judicial previa, la evidencia a pleno olfato puede ser detectada sin una orden. U.S. v. Roby, 122 F.3d 1120, 1124-1125 (8vo Cir. 1997).
Por otro lado, nos parece necesario hacer unas distinciones importantes —relacionadas con los instrumentos tecnológicos que se utilizan para investigar— entre los casos United States v. Place, supra, y Kyllo v. United States, supra, ya que este último podría dar la falsa impresión de enervar lo resuelto en el primero. En el caso Kyllo v. United States, supra, el Tribunal Supremo federal resolvió que utilizar un thermal imager (artefacto que detecta el calor *631 que emite una residencia, lo que permite detectar el crecimiento de marihuana en ésta) constituye un registro a la luz de la Cuarta Enmienda. Para llegar a dicha conclusión la corte enfatizó el hecho de que el thermal imager no era fácilmente accesible y disponible al público en general y éste que era capaz de detectar tanto la actividad protegida como la no protegida por la Constitución (la hora en que una persona toma un sauna o se baña). Id. Ciertamente, al igual que un thermal imager, el olfato canino es un instrumento que permite a la policía obtener información concerniente a un área protegida que de otra forma no podría obtenerse sin la intrusión física. Ahora bien, distinto a Kyllo v. United States, supra, los perros son accesibles para el público en general y el olfato canino solamente detecta la presencia o ausencia de narcóticos (sobre lo que no existe expectativa a la intimidad conforme United States v. Jacobsen, supra) por lo que la información obtenida es limitada y no se extiende a las actividades protegidas, como ocurre con el thermal imager.(23) Podemos colegir que Kyllo v. United States, supra, aplica únicamente a actividades o cosas sobre las que el individuo tiene una expectativa razonable de intimidad, como lo es el hogar. Véase T. Maclin, Katz, Kyllo, and Technology: Virtual Fourth Amendment Protection in the Twenty-First Century, 72 (Núm. 1) Miss. L.J. 51,104-105,124 (2002). Véase U.S. v. Elkins, 300 F.3d 638, 646 (6to Cir. 2002).(24) Por ende, el caso de autos es armonizable con Kyllo v. United States, supra, a través del *632 crisol de United States v. Place, supra, que como ya vimos, es afín al caso de autos.
A su vez, nos parece que es importante distinguir lo predicado en Pueblo v. Soto Soto, supra, con el caso United States v. Place, supra, para demostrar que son armonizables. En el primero, este Tribunal resolvió que los binoculares (aunque se pueden usar para observar el campo abierto frente a una casa sin que esto constituya un registro) no se deben utilizar para observar lo que no se podría ver sin una intrusión inconstitucional a la intimidad. En el caso de autos, el olfato canino se utilizó en un lugar público, donde los agentes tenían derecho a estar y sobre el espacio de aire que rodeaba los bultos que los recurridos soltaron en el suelo del aeropuerto. Asimismo, el olfato canino fue dirigido únicamente a detectar sustancias controladas sobre las cuales no hay expectativa a la intimidad. Este mecanismo investigativo no expone artículos íntimos de las personas dentro de sus equipajes. Por eso, no hubo una intrusión inconstitucional a la intimidad de los recurridos.(25) En fin, de lo anterior se desprende que hay armonía entre el caso United States v. Place, supra, y Pueblo v. Soto Soto, supra.
En conclusión, la utilización del olfato canino como instrumento tecnológico para ayudar al Estado en sus investigaciones no debe limitarse, a priori, por que per-mite obtener información que un ser humano no podría obtener por medio de sus sentidos. Es menester analizar los hechos concretos de cada caso y la manera en que se utiliza el instrumento para determinar si permite otros usos más abarcadores. No constituye ninguna explotación tecnológica el utilizar un can para un fin y contexto delimitados, como lo es el olfatear bultos o equipajes en un lugar público; máxime, cuando sobre la información divulgada por el perro no existe una expectativa a la intimidad *633 por recaer sobre alguna actividad ilegal, como el contrabando.
V
Una vez determinado que el examen de olfato canino sobre el equipaje de los recurridos no constituyó un registro, nos resta determinar si la intervención ulterior a la marca positiva del can es un registro al amparo de la Constitución de Puerto Rico; de ser un registro, debemos determinar si fue razonable. Resolvemos en la afirmativa ambas interrogantes.
El examen de olfato canino, per se, no justifica el registro final sin una orden judicial o sin que concurra alguna de las excepciones al registro sin una orden. Véanse: United States v. Sokolow, 490 U.S. 1, 9 (1989); United States v. Place, supra; U.S. v. Williams, 365 F.3d 399, 405-406 (5to Cir. 2004); U.S. v. Carter, 139 F.3d 424 (4to Cir. 1998); U.S. v. Lambert, 46 F.3d 1064 (10mo Cir. 1995); U.S. v. Harvey, 961 F.2d 1361 (8to Cir. 1992).(26) Es decir, la realización del examen de olfato canino sobre el equipaje, al no ser un registro, tiene el efecto de originar los motivos fundados o de corroborar la sospecha previa que se tenía para motivar el ulterior registro cuando produce una marca positiva.
A la luz de esa realidad, el Procurador General sostiene que el registro ulterior a la marca positiva del can fue razonable porque el olfato del can es análogo al pleno olfato de un agente, como excepción para incautar evidencia sin una orden judicial previa. El Procurador General se apoya en los casos Pueblo v. Dolce, supra, y Pueblo v. Acevedo Escobar, supra.
*634 En Pueblo v. Dolce, supra, se establecieron los criterios que se deben considerar para determinar si un objeto se encuentra a plena vista y puede ser incautado sin una orden judicial previa, a saber: (1) el artículo debe descubrirse por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que divise la evidencia debe tener derecho a estar en el lugar desde donde alcanzó a verla; (3) el objeto debe descubrirse por inadvertencia, y (4) la naturaleza ilícita del objeto debe ser ostensible. íd., pág. 436. En Pueblo v. Acevedo Escobar, supra, este Foro afirmó que la percepción a pleno olfato es análoga a la percepción a plena vista reconocida en Pueblo v. Dolce, supra, variando solamente el sentido a través del cual se detecta la evidencia. Pueblo v. Acevedo Escobar, supra, pág. 779. Por esa analogía, los criterios adoptados en Pueblo v. Dolce, supra, tienen que confluir en Pueblo v. Acevedo Escobar, supra.
La excepción invocada por el Procurador General no aplica al caso de autos. La razón es que luego de un análisis de los requisitos esbozados en el caso Pueblo v. Dolce, supra, no se puede concluir que se satisfagan cabalmente en este caso. Así, por ejemplo, en este caso la evidencia no se descubre por inadvertencia, ya que el agente Rosado Cintrón sospechaba que los bultos de los recurridos contenían narcóticos. Tampoco el agente apreció la naturaleza ilícita del objeto, puesto que la cocaína hallada se encontraba oculta dentro de los bultos de los recurridos.
Por otro lado, se ha reconocido que, en circunstancias particulares de necesidad especial del Estado, un registro sin una orden judicial previa es válido si existe una causa probable por sospecha individualizada.(27) Esta determinación se debe hacer a la luz de un balance de intereses entre los derechos del individuo y los intereses estatales. Véanse: Pacheco Pietri y otros v. E.L.A. y otros, *635 133 D.P.R. 907 (1993); Skinner v. Railway Labor Executives’ Assn., 489 U.S. 602 (1989); Treasury Employees v. Von Raab, 489 U.S. 656 (1989). Ya hemos exteriorizado que, al decidir si procede eximir al Estado de la necesidad de obtener una orden judicial previa para realizar un registro, lo determinante es que el interés público lo justifique y la responsabilidad de obtener la orden bajo las circunstancias particulares del caso probablemente frustren el propósito legítimo que persigue el Gobierno. Pueblo v. Bonilla, supra, pág. 334. En otras palabras, para determinar si posterior a un examen de olfato canino positivo se puede realizar el registro de los bultos, hay que atender la totalidad de las circunstancias, haciendo un balance de intereses. De ahí que las excepciones para llevar a cabo un registro sin una orden no son numerus clausus, sino que se podrán reconocer según las circunstancias particulares de cada caso.(28)
Con relación a la sospecha individualizada razonable que surge luego de realizar una investigación criminal, ésta debe equipararse a los motivos fundados(29) para un arresto conforme lo estatuye la Regla 11 de Procedimiento Criminal, supra.(30) Esto debe ser así, ya que consideramos que si se trata de una norma válida para el arresto, debía *636 serlo también para el registro o allanamiento, ya que no hay mayor intrusión con la intimidad de la persona que el arresto. Véase Pueblo v. Muñoz, Colón y Ocasio, 131 D.P.R. 965, 981-982 (1992). La incautación de la persona misma constituye una intervención gubernamental con la intimidad del ser humano más grave que el registro o allanamiento de una pertenencia suya, y la norma que rige lo mayor debe ser buena también para una intervención menor. íd. Véase, además, Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, op. cit., Vol. I, Sec. 6.10, pág. 361.
En este caso, las circunstancias particulares de necesidad especial fueron ejemplificadas en la sospecha individualizada razonable que, anterior al examen del olfato canino, poseían los agentes del orden público y que quedó corroborada una vez se culminó el examen. La sospecha individualizada razonable quedó probada al analizar los hechos del caso. Según se desprende de los autos, el agente Rosado Cintrón recibió varias confidencias que personalmente corroboró, las cuales indicaban que los recurridos Díaz Medina y Bonano Pérez estaban involucrados en actividades ilícitas de contrabando. La última confidencia recibida por el agente Rosado Cintrón puso de manifiesto que los recurridos estaban cometiendo un delito, al notificársele que llegarían en un vuelo proveniente de Culebra hacia Fajardo con sustancias controladas. Finalmente, cuando Rosado Cintrón llegó al aeropuerto, se encontró de frente a los recurridos y a sus bultos se les realizó un examen de olfato canino que arrojó positivo, corroborando xana vez más la confidencia informada.(31) En fin, la cadena de *637 confidencias corroboradas que culminaron con la marca positiva del can sobre el equipaje de los recurridos son circunstancias excepcionales que tuvieron el efecto de configurar los motivos fundados para llevar a cabo el registro ulterior a la marca positiva del can, sin necesidad de una orden judicial previa.
Al realizar el balance de intereses entre el derecho a la intimidad de los recurridos y el interés del Estado en hacerle frente al trasiego de drogas y combatir la criminalidad, concluimos que la intervención del equipaje fue razonable al estar directamente relacionada con la previa sospecha individualizada del agente Rosado Cintrón de que su contenido tenía narcóticos. No olvidemos que, además de la corroboración personal que hizo dicho agente, el recurrido Díaz Medina había sido arrestado anteriormente por estar involucrado con el trasiego de sustancias controladas. Este hecho le constaba al agente Rosado Cintrón al ser éste quien lo arrestó. Al sumar estos factores, no albergamos duda de que el interés del Estado en el registro sin una orden sobrepasaba el derecho a la intimidad que albergaban los recurridos sobre sus bultos. Hay que añadir que exigir a los agentes que obtengan una orden, hubiese impedido el arresto de los recurridos hasta su obtención y el posterior hallazgo de la evidencia incriminatoria. De esta forma, la probabilidad de que se hubiese frustrado el *638 interés del Estado en combatir la criminalidad aumentaba, ya que, ab interim, los recurridos podían abandonar el aeropuerto de Fajardo. Esto implicaba un potencial escape del eventual arresto. Más aún, en el caso de Díaz Medina, significaba la posible recurrencia de las acciones delictivas que su historial reflejaba.
En síntesis, en el caso de autos la marca positiva del can corroboró las sospechas previas individualizadas que tenían los agentes del orden público. Esa corroboración fue suficiente para configurar los motivos fundados que les permitió abrir los bultos de los acusados y registrarlos. Es decir, en el caso de autos, la marca positiva del can les dio a los agentes los motivos fundados para llevar a cabo el registro del equipaje.
En fin, la marca positiva de un can entrenado para detectar sustancias controladas puede producir una sospecha individualizada razonable (si no se tenía) o corroborarla, según ocurrió en el caso de autos. En ambos supuestos, habrá que atender la totalidad de las circunstancias, haciendo un balance de intereses, para determinar si dicha marca fue o no suficiente para abrir y registrar el equipaje. Este análisis incluye evaluar la confiabilidad del can para detectar sustancias controladas, cuando la parte cuya pertenencia haya sido olfateada y registrada, impugne el registro a base de la confiabilidad y nivel de certeza del can para detectar narcóticos.
VI
Por las razones expuestas anteriormente, resolvemos que el examen de olfato canino sobre el equipaje no es un registro al amparo de la Constitución del Estado Libre Asociado de Puerto Rico y que el registro realizado sin una orden judicial ante la marca positiva del can fue razonable. En vista de ello, concluimos que los foros a quo erraron al ordenar la supresión de la evidencia. Por lo tanto, se revoca el dictamen recurrido y se devuelve el caso al Tribu *639 nal de Primera Instancia para que continúen los procedimientos conforme con lo aquí resuelto.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton emitió una opinión disidente. La Jueza Asociada Señora Fiol Matta disintió con la expresión siguiente: “La Jueza Asociada Señora Fiol Matta está de acuerdo con la parte de la opinión disidente del Juez Presidente Señor Hernández Denton, quien resolvería que el examen de olfato canino constituye un registro per se en sentido constitucional. También, coincide con la opinión disidente en cuanto sostiene que no era necesario que los agentes obtuvieran una orden judicial previa para realizar un examen de olfato canino, al existir una sospecha individualizada razonable de que los acusados Amaury Díaz Medina y Gerardo Bonano Pérez escondían contrabando en su equipaje. No obstante, no puede avalar el registro del bulto que hizo el agente Nelson Rosado Cintrón, una vez la sospecha individualizada razonable fue corroborada por el examen de olfato canino. Entiende que al corroborarse las confidencias de que los acusados Amaury Díaz Medina y Gerardo Bonano Pérez transportaban sustancias controladas, procedía arrestarlos y solicitar una orden judicial de registro para examinar los bultos. No existía una emergencia imperiosa, como lo sería la amenaza de una bomba, los agentes del orden público no se encontraban en una situación donde su seguridad se encontrara en peligro, no existía la posibilidad de que la evidencia se extraviara ni existía ninguna otra excepción al registro sin una orden previa que justificara la intromisión gubernamental con el bulto de los acusados. Al no procederse de esta manera, considera que no erraron los foros inferiores al declarar ‘con lugar’ la Moción de Supresión de Evidencia.” La Juez Asociada Señora Rodríguez Rodríguez emitió un voto disidente, uniéndose a las expresiones de la Jueza Asociada Señora Fiol Matta.

 El agente Rosado Cintrón aseguró que, por su experiencia y por la forma de la envoltura, los paquetes que observó contenían sustancias controladas.

 Según el agente Rosado Cintrón, la envoltura de los paquetes era similar a la de los paquetes que había identificado en Culebra.

 Enmda. IV, Const. EE.UU., L.P.R.A., Tomo 1; Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1.

 La Comisión de la Carta de Derechos de la Convención Constituyente explicó la Sec. 10, que trata sobre la protección contra registros y allanamientos irrazonables, de la manera siguiente:
“La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. El hogar, los muebles y utensilios, los libros y papeles poseídos por un ciudadano son como una prolongación de su persona, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en este círculo privado equivale para todo hombre a una violación de su personalidad. Lo mismo acontece con los medios en que se expresa su intimidad y que reserva tan sólo para algunos: su correspondencia, sus manifestaciones espontáneas a través de los modernos medios mecánicos de comunicación. La lesión de la intimidad es en este sentido el más penoso ataque a los derechos fundamentales de la persona.
“Sin embargo, los mismos medios y propiedades que sirven para el desarrollo y el sostén de la persona pueden ser instrumentos de delito o resultado de su comisión. En estos casos detenerse ante esas fronteras de la personalidad equivaldría a la protección indebida del delito y del delincuente. En esta colisión de lo privado y lo público, la solución se entrega, con todas las garantías, a la autoridad judicial encargada de perseguir y sancionar las transgresiones de la ley. Las garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal.” (Enfasis suplido.) 4 Diario de Sesiones de la Convención Constituyente 2567-2568 (1952).

 Nuestra Constitución, en su Art. II, Sec. 10, reconoce el derecho de la ciudadanía “a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables”, salvo una autorización judicial, “cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales”. Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, págs. 326-327.

 En Kyllo v. United States, 533 U.S. 27 (2001), se recalcó que el hogar es un área donde el reconocimiento a la expectativa razonable a la intimidad tiene raíces profundas en el derecho común.

 Entre las excepciones reconocidas a un registro sin una orden judicial se encuentran: registro incidental a un arresto legal, evidencia a plena vista y consentimiento por parte del ciudadano objeto del registro. Véanse: Pueblo v. Rosario Igartúa, 129 D.P.R. 1055 (1992); Pueblo v. Acevedo Escobar, 112 D.P.R. 770 (1982).

 Place v. United States, 462 U.S. 696 (1983); Indianapolis v. Edmond, 531 U.S. 32 (2000); Illinois v. Caballes, 543 U.S. 405 (2005).

 El Tribunal Supremo federal determinó, a su vez, que detener el equipaje de una persona sólo sería razonable si existiese una sospecha razonable de que el pasajero tiene sustancias controladas en su equipaje. Además, el Tribunal apuntó que la detención del equipaje debía ser breve. Tales pronunciamientos ponen de manifiesto la necesidad de una sospecha razonable para detener el equipaje de una persona con el objeto de someterlo a un examen de olfato canino. Por consiguiente, si no ocurre dicha detención, el equipaje puede ser sometido al examen de olfato canino sin la necesidad de una sospecha razonable previa. Nótese que en el caso de autos siquiera hubo detención de equipaje. El examen de olfato canino se realizó sobre los bultos que los coacusados habían soltado en el piso del aeropuerto.

 Nótese que este razonamiento es cónsono con lo resuelto en United States v. Jacobsen, 466 U.S. 109 (1984), y así lo entendió el máximo Foro federal en Illinois v. Caballes, supra, al citar con aprobación al primero. La lógica es simple y carece de cualquier pretensión distorsionada: si no existe una expectativa legítima de intimidad sobre el contrabando o los narcóticos, por la misma razón un examen de olfato canino, dirigido únicamente a identificar si el equipaje de una persona tiene o no contrabando, tampoco soslaya la expectativa razonable de intimidad que pueda albergar una persona, puesto que dicha expectativa, en ese contexto particular, no se reconoce.

 Véase U.S. v. Lovell, 849 F.2d 910 (5to Cir. 1988). Véase, además, U.S. v. $191,910.00 in U.S. Currency, 16 F.3d 1051 (9no Cir. 1994). Este último caso valida la utilización del olfato canino para examinar un equipaje en ausencia o no de motivos fundados. Establece que si existe una sospecha razonable de que el viajero lleva droga consigo, los agentes deben tener un can en el aeropuerto, o cerca de éste, esperando para oler el equipaje con el propósito de que la detención del equipaje sea breve y razonable. Sin embargo, si no existe una sospecha razonable, los agentes del orden público no tienen que tener un can esperando al viajero en o cerca del aeropuerto.

 En Doran v. Contoocook Valley School Dist., 616 F.Supp.2d 184 (D. N.H. 2009), la corte de distrito federal en New Hampshire ratificó lo resuelto por la jurisprudencia federal y lo extendó a los bultos de estudiantes en una escuela donde los agentes se presentaron con los canes, como parte de un plan llevado a cabo para lidiar con un problema de drogas recurrente en dicha escuela. In extenso, el Tribunal expresó:
“Courts across this country have taken up the issue of drug detection dog sniffs in a variety of circumstances. The existing precedents, those binding on this court and those merely persuasive, leave little doubt that the mere use of trained drug dogs on school grounds to sniff students’ personal items does not qualify as a search within the meaning of the Fourth Amendment. When confronted with cases involving dog sniffs for illegal drugs in other contexts, the United States Supreme Court has repeatedly concluded that the Fourth Amendment is not implicated by such searches. See, e.g., Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (‘[T]he use of a well-trained narcotics-detection canine —one that “does not expose noncontraband items that otherwise would remain hidden from public view,” during a lawful traffic stop, generally does not implicate legitimate privacy interests .... Any intrusion on respondent’s privacy expectations does not rise to the level of a constitutionally cognizable infringement.’ (internal citations omitted)); City of Indianapolis v. Edmond, 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (‘It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment... a sniff by a dog that simply walks around a car is ‘much less intrusive than a typical search.” ’); United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (‘[W]e conclude that the particular course of investigation that the agents intended to pursue here —exposure of respondent’s luggage, which was located in a public place, to a trained canine— did not constitute a “search” within the meaning of the Fourth Amendment.’).” (Énfasis suplido.)

 Es importante distinguir cuando ocurre detención del equipaje y cuando no hay detención. La jurisprudencia federal ha señalado consistentemente que cuando se trata de la detención del equipaje para someterlo al olfato canino, es necesario tener sospecha razonable de que el equipaje contiene sustancias controladas. Precisamente en United States v. Place, supra, se acoge la norma federal reconocida en Terry v. Ohio, 392 U.S. 1 (1968), para aplicarla al equipaje. En Terry v. Ohio, supra, el máximo foro federal estableció que era válido someter a una persona a un registro si se sospechaba razonablemente que esa persona tenía armas, sin tener causa probable para arresto. Terry, supra, pág. 30. Véanse, además: U.S. v. Tillman, 81 F.3d 773, 775 (8vo Cir. 1996); U.S. v. Polk, 97 F.3d 1096, 1099 (8vo Cir. 1996).

 Véase, a modo ilustrativo, B.C. v. Plumas Unified School Dist., 192 F.3d 1260, 1267 (9no Cir. 1999).

 Véase, a modo ilustrativo, Horton v. Goose Creek Ind. School Dist., 690 F.2d 470 (5to Cir. 1982).

 A manera de ejemplo, surge del propio texto de la Constitución del Estado Libre Asociado de Puerto Rico que en la See. 8 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, el derecho a la intimidad se reconoce de forma expresa, distinto a como ocurre en la Constitución federal.

 Véase Pueblo v. Duarte Mendoza, 109 D.P.R. 596, 600 esc. 5 (1980). Aquí, este Foro reconoció el derecho al aborto, limitándose a predicar ese derecho en la Constitución federal y anunciando que en cuanto a este tema “la extensión de las protecciones que brinda nuestra Constitución no es mayor a la que brinda la norteamericana”.

 Cabe destacar que el estado de Montana, al igual que Puerto Rico, reconoce el derecho a la intimidad de manera independiente en el Art. II, Sec. 10 de su Constitución, y el derecho a la protección contra registros y allanamientos irrazonables en su Art. II, Sec. 11. A pesar de que dicho estado no estaba obligado a acoger la normativa de United, States v. Place, supra, por conducto del principio del ámbito mínimo federal y la factura más ancha, decidió seguir el precedente federal.

 Esto se distingue de lo resuelto en United States v. Place, supra, que extendió la norma de stop and frisk reconocida en Terry v. Ohio, supra, para hacerla efectiva en el contexto del equipaje de una persona. Dicha norma establece que el equipaje de una persona puede ser detenido cuando existe una sospecha individualizada razonable de que contiene algún material delictivo, siempre que sea por un espacio de tiempo razonable.

 En State v. McMillin, 927 P.2d 949 (Kan. App. 1996), en el estado de Kansas se sostuvo que el examen de olfato canino alrededor de un carro estacionado en un lugar público no era un registro bajo la Cuarta Enmienda. Lo mismo ocurrió en State *628 v. Garcia, 535 N.W.2d 124 (Wis. App. 1995), donde el estado de Wisconsin llegó a la misma conclusión.

 Véanse: State v. Box, 73 P.3d 623 (2003); Dowty v. State, 210 S.W.3d (Ark. 2005); People v. Ortega, 34 P.3d 986, 991 (Colo. 2001); Bain v. State, 839 So.2d 739 (Fla. App. 2003); Cole v. State, 562 S.E.2d 720 (Ga. App. 2002); State v. Snitkin, 681 P.2d 980 (Hawaii 1984); State v. Parkinson, 17 P.3d 301 (Idaho App. 2000); People v. Cox, 739 N.E.2d 1066 (Ill. App. 2000); Bradshaw v. State, 759 N.E.2d 271 (Ind. App. 2001); State v. Bergmann, 633 N.W.2d 328 (Iowa 2001); State v. Barker, 850 P.2d 885 (Kan. 1993); State v. Kalie, 699 So.2d 879 (La. 1997); State v. Washington, 687 So.2d 575 (La. App. 1997); Fitzgerald v. State, 864 A.2d 1006 (2004); 815 N.E.2d 628 (Mass. App. 2004); Millsap v. State, 767 So.2d 286 (Miss. App. 2000); State v. LaFlamme, 869 S.W.2d 183 (Mo. App. 1993); Gama v. State, 920 P.2d 1010 (1996); State v. Cleave, 33 P.3d 633 (2001); People v. Offen, 585 N.E.2d 370 (N.Y. 1991); State v. Fisher, 539 S.E.2d 677(N.C. App. 2000); State v. Kesler, 396 N.W.2d 729 (N.D. 1986); State v. Knight, 679 N.E.2d 758 (Ohio 1997); State v. Rusnak, 696 N.E.2d 633 (Ohio App. 1997); Scott v. State, 927 P.2d 1066 (Ókl. Crim. App. 1996); State v. Smith, 963 P.2d 642 (Or. 1998); Com. v. Johnston, 530 A.2d 74 (Pa. 1987); State v. England, 19 S.W.3d 762 (Tenn. 2000); Rodriguez v. State, 106 S.W.3d 224 (Tex. App. 2003); State v. Miller, 647 N.W.2d 348 (Wis. App. 2002); Morgan v. State, 95 P.3d 802 (Wyo. 2004).

 Véanse: Pueblo v. Soto Soto, supra; Dow Chemical Co. v. United States, 476 U.S. 227 (1986); United States v. Knotts, 460 U.S. 276 (1983). Véase, además, J.W. Hall y C. Underwood, Search and Seizure, 3ra ed., Nueva Jersey y California, Lexis-Nexis Pub. Co., Vol. I y II Suplemento, pág. 152-160.

 En Illinois v. Caballes, supra, págs. 409-410, el máximo Foro federal sostuvo que no había ninguna incompatibilidad entre lo resuelto en Kyllo v. United States, supra, y la utilización del examen de olfato canino para detectar narcóticos. Esto porque el olfato de un can se limita a detectar artículos sobre los cuales no se reconoce una expectativa legítima de intimidad, pero el thermal imager tenía la capacidad de detectar tanto las actividades protegidas como las no protegidas por la Cuarta Enmienda.

 Compárese a United States v. Karo, 468 U.S. 705 (1984), con United States v. Knotts, supra. En el primero se resolvió que monitorear con un beeper electrónico el interior de una casa, constituye un registro. En el segundo se resolvió que dicho acto no es un registro si se realiza cuando se está viajando en público. Véase, además, M. Adler, Cyberspace, General Searches, and Digital Contraband: The Fourth Amendment and the Net-Wide Search, 105 (Núm. 4) Yale L.J. 1093 (1996).

 Véase U.S. v. Esquilin, 208 F.3d 315, 318 (1er Cir. 2000); U.S. v. Reed, 141 F.3d 644, 649 (6to Cir. 1998); U.S. v. Garcia, 42 F.3d 604 (10mo Cir. 1994); United States v. Goldstein, 635 F.2d 356 (5to Cir. 1981).

 Sin embargo, nótese que cuando el examen de olfato canino se realiza sobre el exterior de un automóvil, no hace falta obtener una orden judicial previa o cumplir con alguna de las excepciones al registro sin una orden, para proceder a registrar el vehículo. Illinois v. Caballes, supra, póg. 406. Tampoco hace falta una orden cuando se trata de registros rutinarios de bultos o equipajes en un aeropuerto por razones de seguridad pública. Véase Chandler v. Miller, 520 U.S. 305, 323 (1997).

 El principio de sospecha individualizada ha sido reconocido por nuestro ordenamiento en distintos casos. Véanse: Pueblo v. Yip Berríos, supra; Pueblo v. Bonilla, 149 D.P.R. 318 (1999).

 por es0; ¡a incorporación a nuestro ordenamiento jurídico de las excepciones para legitimar un registro sin una orden, tienen origen jurisprudencial. Véase Pueblo v. Riscard, 95 D.P.R. 405 (1967); E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984); Pueblo v. Narváez Cruz, 121 D.P.R. 429 (1988); Pueblo v. Sosa Díaz, 90 D.P.R. 622 (1964).

 Entiéndase como motivos fundados “[alquella información y conocimiento que llev[a] a una persona ordinaria y prudente a creer que [la persona intervenida] ha cometido un delito, independientemente de que luego se establezca o no la comisión del delito”. Pueblo v. Martínez Torres, 120 D.P.R. 496, 504 (1988).

 Este precepto estatuye que “[u]n funcionario del orden público podrá hacer un arresto sin la orden correspondiente: a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto, b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia, c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad”. 34 L.P.R.A. Ap. II, R. 11.

 Nótese que, en este caso, están presentes las circunstancias necesarias para que una confidencia sea suficiente y constituya los motivos fundados de la Regla 11 de Procedimiento Criminal, supra, para realizar un arresto sin una orden. Véanse: Pueblo v. Ortiz Alvarado, 135 D.P.R. 41 (1994); Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977). En estos casos este Tribunal resolvió que una confidencia constituye los motivos fundados para realizar un arresto sin una orden bajo la Regla 11 de Procedimiento Criminal, supra, si se cumple con alguno de los requisitos siguientes: (1) que el confidente ha suministrado previamente información correcta; (2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; (3) que la confidencia ha sido corroborada mediante la observación del agente o por información de otras fuen *637 tes, o (4) que la corroboración se relaciona con los actos delictivos cometidos o en proceso de cometerse. Además, también se satisface el requisito expresamente establecido en Pueblo v. Serrano, Serra, 148 D.P.R. 173 (1999), a los efectos de que para que la confidencia constituya los motivos fundados, tiene que haber una corroboración de las actividades sospechosas que se informan en la confidencia.
Si las confidencias corroboradas pueden sostener los motivos fundados de la Regla 11 de Procedimiento Criminal, supra, también podrían crear la sospecha individualizada razonable —equivalente a los motivos fundados de la Regla 11 de Procedimiento Criminal, supra— para llevar a cabo un registro sin una orden. Esto parte del mismo principio reconocido en el caso Pueblo v. Muñoz, Colón y Ocasio, supra, haciendo referencia al caso Pueblo v. Pagán, Ortiz, 130 D.P.R. 470 (1992), de que una norma que es válida para el arresto, debía serlo también para el registro o allanamiento, ya que no hay mayor intrusión con la intimidad de la persona que el arresto. Por lo tanto, si se permite arrestar a una persona cuando las confidencias corroboradas crean los motivos fundados, con mayor razón se puede llevar a cabo un registro sin una orden judicial cuando hay sospecha individualizada razonable surgida por unas confidencias corroboradas a través de la marca positiva de un can entrenado para detectar el artículo delictivo relacionado con la confidencia.